Kipin Industries, Inc. et al., Appellees, *v.* American Universal Insurance Company, Appellant; First State Insurance Company.

(No. C-860658—Decided August 12, 1987.)

*Keating, Muething & Klekamp* and *Richard L. Creighton, Jr.,* for appellees Kipin Industries, Inc., Frank Irey, Jr., Inc., and World Pipe Service Company.

*Barron & Peck* and *Arthur H. Schlemmer,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal from the Court of Common Pleas of Hamilton County.

Defendant-appellant American Universal Insurance Company ("AUIC") appeals from a judgment declaring that under its comprehensive general liability policy, it had a duty to defend its insureds, the plaintiffs-appellees ("plaintiffs"), in two consolidated suits brought in the federal district court by the United States and the state of Ohio against plaintiffs and other parties for damages arising from the wrongful release or discharge of hazardous waste by Chem-Dyne Corporation at a disposal site in Hamilton, Ohio.

When AUIC refused to defend, the plaintiffs sought a declaratory judgment. The dispute was presented on cross-motions for summary judgment on the basis of the pleadings and three affidavits, and the trial court ruled in favor of plaintiffs. AUIC appealed and now presents assignments of error designated "A" and "B," the first alleging error in granting plaintiffs'

motion and the second alleging error in overruling AUIC's motion. Believing that the two allegations are obverse sides of the same contention, we treat these two as though they were one assignment of error. We find no merit in it.

To summarize our decision, applying the principle of *Willoughby Hills* v. *Cincinnati Ins. Co.* (1984), 9 Ohio St. 3d 177, 9 OBR 463, 459 N.E. 2d 555, and following the decision in *Buckeye Union Ins. Co.* v. *Liberty Solvents & Chemicals Co.* (1984), 17 Ohio App. 3d 127, 17 OBR 225, 477 N.E. 2d 1227, we agree with the trial court that AUIC has a duty to defend plaintiffs. *Willoughby Hills* holds that the insurer must, under its contractual duty to defend, accept the defense of a claim when the allegations of the pleadings in an action against its insured "state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded * * *." *Id.,* syllabus.

We note that our decision is only about the duty to defend. We do not reach the question of whether AUIC has a duty to indemnify; that is, whether it must make any payments to plaintiffs under the policy. That question remains to be decided below.

The documents cognizable for summary judgment under Civ. R. 56 disclose that World Pipe Service Company is a partnership founded by Kipin Industries, Inc. and Frank Irey, Jr., Inc. to clean and rehabilitate pipelines, tanks and similar equipment. World Pipe contracted to "gas-free" certain barges (owned by J & L Steel Corporation and Ohio Barge Line Company) by removing benzene and naphthalene from them, and hired Chem-Dyne Corporation of Hamilton, Ohio, to dispose of the waste wash waters produced by the cleaning process. Chem-Dyne's operation allegedly polluted the air, soils, surface waters and ground waters in the vicinity of its Hamilton facilities. The United States and the state of Ohio sued Chem-Dyne, World Pipe and more than one hundred other defendants, in separate federal suits that were later consolidated, seeking damages under the following claims for relief: (A) strict liability under the federal Superfund Amendments and Reauthorization Act of 1986, codified in part at Section 9601 *et seq.,* Title 42, U.S. Code ("Superfund Act"); (B) nuisance; (C) common-law strict liability for engaging in an ultra-hazardous activity; (D) both common-law negligence and common-law recklessness in selecting and instructing Chem-Dyne; and (E) breach of the non-delegable duty to ensure the safe and proper storage, treatment and disposal of its waste products.

World Pipe had purchased from AUIC a policy of comprehensive liability insurance that was effective from April 1, 1979 to April 1, 1981, as duly extended, which was the period during which World Pipe contracted with Chem-Dyne to dispose of the hazardous waste materials. The policy describes the "coverage" (in part) in the following language:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"* * *

"Coverage B. property damage to which this insurance applies, *caused by an occurrence,* and the company shall have the right and *duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent * * *."* (Emphasis added.)

In refusing to defend against the federal and state suits, AUIC initially claimed (1) that the policy did not cover

any of World Pipe's potential liabilities because the claimed damages were not caused by an "occurrence" as defined in the policy, and (2) that even if they did arise from an "occurrence," coverage was barred under exclusion (f), sometimes called the "Polluters Exclusion Clause." In this appeal, AUIC advances the additional arguments (3) that coverage is excluded by the "completed operations clause," (4) that all claimed expenditures from the Superfund occurred after the policy period, and (5) that in any event, there was no "property damage." The last two arguments, (4) and (5), were not specifically presented to the trial court and might therefore be considered waived. In the interest of justice, however, we believe that they fall under the general claim of "no coverage" and we will consider them.

Addressing first argument (5), that there was no "property damage," we note that the word "property" is not separately defined in the policy under scrutiny. It must, therefore, receive its common meaning: "property" includes all things, tangible or intangible, that may be owned or possessed. Webster's Third New International Dictionary (1986) 1818, definition 2 under "property." However, the phrase "property damage" is defined in the policy[1] and this definition limits the phrase to injury, destruction or loss of use of *tangible* property.

The federal and state complaints allege damage by contamination to the air, lands and waters in the vicinity of the Chem-Dyne facilities (that is, to the environment). While it may be argued that air is not "property" because it is neither tangible nor subject to ownership or possession, no one can dispute that land and water are both tangible and subject to specific ownership and possession. Nothing in the policy limits coverage to privately owned property, and nothing excludes public property or the public interest in the use and safety of privately owned property. Construing the policy in favor of the insured in accordance with established principles of insurance law that require an interpretation favoring the insured, we hold that "property" includes the interests of the federal and the state governments in the tangible environment and its safety. Thus, when the en-

---

[1] "Property damage" is defined in Form L 4050 J, which is described in one of the affidavits as being the policy jacket. This document is authenticated by the claims representative of AUIC and identified as a part of the insurance policy under scrutiny. Plaintiffs argue that because AUIC admitted in its answer that the policy as attached to plaintiffs' complaint (without the policy jacket) was indeed the policy to be interpreted in this declaratory judgment action, AUIC is now barred from placing the policy jacket before the court. We find no merit in plaintiffs' argument for several reasons. Plaintiffs did not allege in their complaint that the copy attached to it was totally and exclusively complete; instead, plaintiffs stated "American Universal is believed to have the original document," thus suggesting that AUIC had the complete policy. Further, plaintiffs did not move to strike AUIC's authenticating affidavit or otherwise voice their objection to the trial court's consideration of the policy jacket as being in fact part of the policy under scrutiny. Accordingly, we consider the policy jacket to be a part of the policy to be construed.

The definition of "property damage" reads:

"'**property damage**' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period[.]"

vironment has been adversely affected by pollution to the extent of requiring governmental action or expenditure or both for the safety of the public, there is "property damage" whether or not the pollution affects any tangible property owned or possessed exclusively by the government.

In argument (1), AUIC contends that the wrongful dispersal of hazardous waste does not come within the policy's coverage, because coverage is limited to property damage "caused by an occurrence," and an "occurrence" is defined in the policy[2] as follows:

"**Occurrence**" means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint **of the insured**[.]"

We find no merit in this argument because we agree with the conclusion set forth in *Buckeye Union, supra,* at 131-132, 17 OBR at 230-231, 477 N.E. 2d at 1232-1233, that the definition of "occurrence" includes the release or dispersal of hazardous waste materials, as alleged in the federal and state complaints under scrutiny. The word is commonly understood to have a broader meaning than "accident" because it includes events that happen in any way at all. It is not restricted to a momentary event but includes any event that causes damages "neither expected nor intended." *Id.* An occurrence may take place over a span of time, as in the discharge or release of dangerous substances from insecure storage and control, *Grand River Lime Co.* v. *Ohio Cas. Ins. Co.* (1972), 32 Ohio App. 2d 178, 61 O.O. 2d 200, 289 N.E. 2d 360, and an occurrence may be accidental where the damages it caused were "neither expected nor

intended from the standpoint of the insured."

The identical definition of an "occurrence" was held in *Wedge Products, Inc.* v. *Hartford Equity Sales Co.* (1987), 31 Ohio St. 3d 65, 31 OBR 180, 509 N.E. 2d 74, not to include an intentional tort committed by an employer against its employee. The torts alleged in the federal complaints in the instant case were not exclusively intentional torts, because the damages caused by the discharge or release of the contaminants can be viewed as neither intended nor substantially certain to occur.

AUIC's argument (2) is that even if the discharge or release constituted an "occurrence," there was no coverage under exclusion (f), which states:

"This Insurance does not apply:

"* * *

"(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental*[.]" (Emphasis added.)

We interpret the non-applicability clause (emphasized above) in the same way as does the Court of Appeals for Summit County in *Buckeye Union, supra,* at 132-134, 17 OBR at 231-233, 477 N.E. 2d at 1233-1235, an interpretation that is with the weight of authority. In brief, this interpretation is that an event is "sudden and accidental" and thus not excluded from comprehensive coverage if the damaging result is neither expected nor intended by the insured. *Id.* (citing *Jackson Twp. Municipal Utilities Auth.* v. *Hartford Acc. & Indemn. Co.* [1982], 186 N.J. Super. 156, 162-164,

---

[2] The definition of "occurrence" set forth in the text of this decision is taken from the policy jacket. See fn. 1 above.

451 A. 2d 990, 993-994). The clause must be construed strictly against the insurer because it is ambiguous in meaning and its subject matter is an exclusion from what is stated to be comprehensive coverage against liability. We find in the record before us a 1970 circular to the members of the Insurance Rating Board that, in discussing exclusion (f), states that the clause is intended to clarify the definition of "occurrence" so as to exclude coverage for expected or intended results. Exclusion (f) does not bar coverage in this case.

Argument (3) is that coverage of the damages charged in the federal and state complaints was excluded by the "completed operations clause."[3] Again, we agree with the conclusion set forth in *Buckeye Union, supra,* at 134-135, 17 OBR at 233-234, 477 N.E. 2d at 1235-1236. This exclusion does not apply to the discharge or release of pollutants, because it is intended to be a limitation on coverage for injuries caused by defective workmanship that occur after the completion of work by the insured on a construction or service contract.

AUIC maintains in argument (4) that all expenditures for which the United States and the state of Ohio seek reimbursement occurred after the policy period. The argument is without merit, because the state alleges in paragraph 117 of its complaint that it took remedial action "between February of 1980 and March of 1982 at a cost of more than $421,000 at the Chem-Dyne site," expenditures clearly within the policy period.

Finding no error, we affirm. Because there are unresolved issues in the case, we remand it to the trial court for further proceedings.

*Judgment affirmed and cause remanded.*

KLUSMEIER, P.J., BLACK and HILDEBRANDT, JJ., concur.

---

[3] This phrase is defined in the policy jacket as follows:

" 'completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

"(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

"(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

"(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

"Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

"The completed operations hazard does not include bodily injury or property damage arising out of

"(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

"(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

"(c) operations for which the classification stated in the policy or in the company's manual specifies 'including completed operations'[.]"