421 S.E.2d 493

JOY TECHNOLOGIES, INC., Plaintiff Below, Appellant,

v.

LIBERTY MUTUAL INSURANCE COMPANY, et al., Defendants Below, Appellee.

No. 20153.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 1992.

Decided June 11, 1992.

Filed as Modified July 21, 1992.

John H. Shott, J.W. Montgomery, III, Michael H. Ginsberg, Curt Vazquez, Nancy L. Heilman, Cohen & Grigsby, Bluefield, for appellant.

James M. Brown, Lee H. Glickenhaus, Martha J. Koster, Pittsburgh, Pa., for appellee.

BROTHERTON, Justice:

This is an appeal by Joy Technologies, Inc.,[1] from an order entered by the Circuit Court of Mercer County on June 26, 1990. That order granted Liberty Mutual Insurance Company[2] partial summary judgment in an action brought by Joy Technologies for indemnification for certain pollution claims which had been paid by Joy Technologies. Liberty Mutual had issued commercial general liability policies to Joy Technologies which had obligated it to defend and indemnify Joy for liability claims for personal injury and property damage. It, however, refused to indemnify Joy on the pollution claims involved in the present case on the ground that an exclusion clause contained in certain of its policies excluded coverage for such claims. The circuit court, in granting Liberty Mutual summary judgment, in essence, found that the exclusion clause precluded coverage for pollution damage unless the pollution was "sudden and accidental." In reaching that conclusion, it appears that the circuit court, relying upon the holding of this Court in *Liberty Mutual Insurance Company v. Triangle Industries, Inc.*, 182 W.Va. 580, 390 S.E.2d 562 (1990), applied the law of Pennsylvania, which indicates that the exclusion clause in question relieves an insurer of liability unless the pollution was "sudden and accidental."

On appeal, Joy Technologies claims that West Virginia had a more significant relationship with the parties in this case than Pennsylvania and that, under the circumstances, and under the holding in *Liberty Mutual Insurance Company v. Triangle Industries, Inc., Id.*, the law of West Virginia rather than the law of Pennsylvania should have been applied in resolving the issues raised. It also claims that under West Virginia law the exclusion clause should be construed to preclude liability of the insurer only when pollution damage was expected or intended by the insured.

After reviewing the questions presented and the record, this Court agrees with Joy Technologies' assertions. Accordingly, the judgment of the Circuit Court of Mercer County is reversed.

The facts in this case show that Joy Technologies, Inc., is a successor of Joy Manufacturing Company. Joy Manufacturing Company was a Pennsylvania corporation with executive offices in Pennsylvania and with a facility in West Virginia.

In 1968, Joy Technologies, Inc., purchased a manufacturing plant in Bluefield, West Virginia. Joy utilized the facility for cleaning and rebuilding mining machinery. Joy sold the plant in 1980 and moved its operations to Bluefield, Virginia. Joy continues to employ a number of West Virginia residents in its Bluefield, Virginia, operations.

In cleaning and repairing mining machinery at its West Virginia facility, Joy utilized oil containing polychlorinated biphenyls or "PCBs." The same type of oil had been utilized at the facility before Joy purchased it.

In the 1970's, concerns arose over the potential environmental hazards of PCBs, and in the mid-1970's the United States Environmental Protection Agency advised Joy Technologies, Inc., of the concerns. Subsequently, Joy adopted measures to prevent pollution from the PCBs.

---

1. Hereinafter variously also referred to as "Joy Technologies" or "Joy".

2. Also referred to as "Liberty Mutual".

In spite of its efforts, in 1985 Joy discovered PCB contamination at the Bluefield, West Virginia, site and on neighboring property. Joy notified the Environmental Protection Agency and negotiated an order with the Agency to remediate the contamination. Pursuant to the order, Joy eliminated the pollution at a cost of over $6,000,-000.

Additionally, after the pollution was discovered, owners of property adjoining the Bluefield site filed suit against Joy for property damage, and the individual who had purchased the Bluefield site from Joy, Elwin Aliff, brought an action claiming that the PCB contamination had diminished the value of the property. Personal injury claims were also asserted by employees, former employees, and their spouses who alleged that they had suffered bodily injuries as a result of exposure to PCBs and other substances.

From 1944 until January 1, 1978, Liberty Mutual Insurance Company, a Massachusetts corporation with its principal place of business in Massachusetts, issued commercial general liability policies to Joy. The policies obligated Liberty Mutual to defend and indemnify Joy for liability claims based on personal injury or property damage arising out of an "occurrence." The policies defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

The policies which Liberty Mutual issued to Joy Technologies beginning in 1972 contained an exclusion clause. The exclusion clause provided that coverage did not extend:

[T]o bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.[3]

After the various claims mentioned above arose against Joy Technologies as a result of the pollution of the Bluefield, West Virginia, facility, Liberty Mutual Insurance Company, taking the position that the exclusion clause contained in the policies issued after 1971 relieved it of liability, refused to indemnify and defend Joy as was generally required on the policies which it had issued to Joy. Joy, therefore, instituted this action for breach of contract and for a declaratory judgment that it is entitled to defense and indemnity for personal injury and property liability arising out of the pollution at the Bluefield facility.

After the filing of Joy's complaint, Liberty Mutual moved for summary judgment on the claims arising after 1971 at the Bluefield, West Virginia, facility on the basis of the exclusion clause contained in the policies issued to Joy after 1971. Liberty Mutual took the position that since the pollution was not "sudden and accidental," the exclusion clause barred it of liability for the years that its policies contained the clause. In support of the motion, Liberty Mutual introduced depositions taken in an underlying personal injury and property damage case brought against Joy Technologies, Inc. The evidence from that case

---

3. In the record of the present appeal a copy of only one policy has been submitted to this Court. That policy bore an expiration date of October 1, 1974. In addition to the language quoted in the body of the opinion, the 1974 policy submitted to the Court contains another "Contamination or Pollution Exclusion" which has somewhat different language. The page containing that additional clause does not state an effective date or an expiration date, and it is not clear to the Court whether it was actually a part of the policy issued to Joy Technologies.

Both Joy Technologies and Liberty Mutual, in their briefs, identify the language quoted in the opinion as constituting the exclusion in issue in this case. The same language was also submitted to the West Virginia Insurance Commissioner in 1970 for his consideration and approved as hereinafter discussed.

Given the nature of the record and the representations of the parties in their briefs, this Court has based its conclusions on the clause quoted in the body of the opinion rather than on the additional "Contamination or Pollution Exclusion" submitted in the record.

showed that Joy rebuilt motors used in mining equipment at the Bluefield, West Virginia, facility. The rebuilding of the motors required the emptying of PCB contaminated oil. In emptying the motors, the oil was drained into five-gallon buckets. From 1968 until 1972 or 1973, Joy's employees regularly disposed of the oil by dumping it down a storm drain outside the AC motor room at the facility, by dumping it onto a gravel parking lot, or by dumping it on a hill or bank at the site. There was also evidence that PCB-contaminated oil was routinely spattered inside the building where the motors were rebuilt, that the oil was everywhere, and that there were puddles of it on the floor. At times, buckets of the oil were knocked over by forklifts and spilled. The testimony also indicated that spills occurred on a regular basis. Liberty Mutual essentially argued that this evidence showed that the pollution was not "sudden and accidental" and that coverage for it was excluded by the exclusion clause.

At the submission of briefs and oral arguments, the Circuit Court of Mercer County granted Liberty Mutual's motion for summary judgment. In so doing, the Court apparently concluded that under *Liberty Mutual Insurance Company v. Triangle Industries, Inc., Id.*, Pennsylvania law governed the interpretation of the exclusion clause in the policies issued by Liberty Mutual in 1972 and the following years. Further, under Pennsylvania law the exclusion clause precluded coverage for claims arising out of pollution at the Bluefield facility for the period Liberty Mutual's policies contained the clause. On June 26, 1990, the circuit court issued a written order formally embodying its conclusions. It is from that order that Joy Technologies, Inc., now appeals.

On appeal, Joy Technologies first asserts that West Virginia had a more significant relationship with the parties in the case than Pennsylvania and that, under the circumstances, the circuit court should have applied the law of West Virginia rather than the law of Pennsylvania in resolving the issues presented.

The question of whether West Virginia law or Pennsylvania law applies in this case is somewhat critical since Pennsylvania has carefully examined the exclusion clause in issue in the present case and has concluded that it is unambiguous and that its clear and plain meaning is to exclude coverage for intentional pollution and for unintentional pollution resulting from a release or dispersal that occurs gradually over time. *Lower Paxton Township v. United States Fidelity & Guaranty Company*, 383 Pa.Super. 558, 557 A.2d 393 (1989). *See also, United States Fidelity & Guaranty Company v. The Korman Corp.*, 693 F.Supp. 253 (E.D.Pa.1988); *Fischer & Porter Company v. Liberty Mutual Insurance Company*, 656 F.Supp. 132, (E.D.Pa.1986); *Techalloy Company, Inc. v. Reliance Insurance Company*, 338 Pa.Super. 1, 487 A.2d 820 (1984).

In *Liberty Mutual Insurance Company v. Triangle Industries, Inc., supra,* this Court addressed the question of what law should be applied in interpreting an insurance policy. In the sole syllabus in that case, the Court ruled that:

In a case involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of the formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state.

In adopting the rule in the *Triangle Industries* case which favors the application of the law of the forum in which formation of the contract occurs, the Court recognized that "certainly, predictability and uniformity of result" were desirable in contract negotiations and application. The Court did not, however, preclude the application of the law of another state where the other state has a more significant relationship to the transaction and the parties, or where the law of the state of formation is contrary to the public policy of the other state.

The action in the present case arises out of the expenditures of monies for remediat-

ing damage caused by pollution to property in West Virginia, and it is rather clear that the pollution arose from operations which were conducted in West Virginia and involved a facility located in West Virginia. Thus, the injury occurred in West Virginia, the instrumentality of injury was located in West Virginia, and the forum selected to try the issues was West Virginia. These factors suggest that West Virginia has had a very significant relationship to the transaction and the parties. In fact, the relationship would appear to be more substantial than that of Pennsylvania, where the contract was formed.

In a very recent case, similar to the one now before the Court, the New Jersey Superior Court, Appellate Division, concluded that contacts similar to those in the present case were alone sufficient to justify the application of the law of the forum rather than the law of the jurisdiction where the contract was entered into. In that case, *Gilbert Spruance Co. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 254 N.J.Super. 43, 603 A.2d 61 (App.Div.1992), the New Jersey Court stated:

> We hold that New Jersey courts should interpret according to New Jersey law a pollution exclusion clause contained in a comprehensive general liability insurance policy, wherever written, which was purchased to cover an operation or activity, wherever its principal location, which generates toxic wastes that predictably come to rest in New Jersey and impose legal liabilities there on the insured. In such a case, New Jersey has the dominant and significant relationship with the parties, the transaction, and the outcome of the controversy.

Slip op. at 10.

■ However, as indicated in *Liberty Mutual Insurance Company v. Triangle Industries, supra*, a further substantial factor which might militate against the application of the law of the state of contract formation is the public policy of the state of litigation.

Certainly, in this Court's view, an essential part of the public policy of the State of West Virginia is that the law of the State

should be administered in such a way as to insure that foreign corporations which seek to do business in West Virginia act in a manner consistent with their studied, unambiguous, official, affirmative representations to the State, its subdivisions, or its regulatory bodies.

As will hereinafter be discussed, this Court believes that Liberty Mutual Insurance Company, in studied, affirmative and official communications with a regulatory authority of the State of West Virginia, prior to the institution of this action, took the position that the exclusion in question in the present case would have a meaning and effect different from that attributed to it by the State of Pennsylvania. In view of this, if this Court held that Pennsylvania law applied to the questions in issue, it would allow Liberty Mutual Insurance Company to take a position, and act in a manner, inconsistent with Liberty Mutual's studied, unambiguous, official and affirmative representations. Such, in this Court's view, would be inconsistent with, and contrary to, the public policy of this State.

■ Under the circumstances, the Court believes that in spite of the general policy of the law favoring the application of the law of a state where a contract is formed, the Court, in line with the overall holding in the syllabus of *Liberty Mutual Insurance Company v. Triangle Industries, Inc., supra*, believes that the law of West Virginia, rather than the law of Pennsylvania, should govern the resolution of the questions involved in the present case.

■ The question which the Court must now address is what is the legal effect in West Virginia of the exclusion in question in the policies issued by Liberty Mutual Insurance Company. Before this question is addressed, however, certain observations should be made regarding the basic coverage language of the general commercial liability policy.

The basic language of the policy states:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. bodily injury or

Coverage B. property damage to which this policy applies, caused by an occurrence....

An occurrence is defined as:

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

Thus, under the basic policy issued by Liberty Mutual Insurance Company, Liberty Mutual obligated itself to defend and indemnify Joy Technologies for liability claims based on personal injury or property damage arising out of an "occurrence," and an "occurrence" was defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

The record shows at the time Liberty Mutual adopted this standard form for the commercial general liability policy, a memorandum entitled "Summary of Broadened Coverage Under New GL Policies With Necessary Limitations to Make This Broadening Possible," was circulated internally within the company. That memorandum indicated that the policies covered liabilities including:

Coverage for gradual BI [bodily injury] or gradual PD [property damage] resulting over a period of time from exposure to the insured's *waste disposal*. Examples would be gradual adverse effect of smoke, fumes, air or stream pollution, contamination of water supply or vegetation. We are all aware of cases such as contamination of oyster beds, lint in the water intake of down stream industrial sites, the Donora Pa. atmospheric contamination, and the like.

In interpreting the basic policy, courts have uniformly indicated that the language generally covers claims arising from pollution. However, because of the "expected" and "intended" language, intentional pollution claims are not covered. The fact that pollution has occurred over a period of time, in the absence of an element of inten-

tion or expectation, has not been held to preclude coverage under the basic language. *See Liberty Mutual Insurance Company v. SCA Service, Inc.*, No. 88–6575 (Mass.Super., October 12, 1989); *Kipin Industries, Inc. v. American Universal Insurance Company*, 41 Ohio App.3d 228, 535 N.E.2d 334 (1987).

In the present case there were no facts elicited which demonstrate that Joy Technologies at any level intended at any time to harm property, persons, or environment in conducting its business. In fact, certain depositions indicate that the disposal practices used by Joy, and which were ultimately found to have caused pollution, were commonly accepted in the industry at the time. When Joy acquired knowledge of possible harm from the practices, it changes those practices.

In this Court's view, the evidence adduced does not support the conclusion that Joy Technologies expected or intended to do harm when it dumped and negligently allowed the spilling of oils contains PCBs at the Bluefield site.

Given all these circumstances, the question in the present case is ultimately whether the exclusion clause contained in the policies issued by Liberty Mutual to Joy Technologies in 1972, and on later dates, effectively excluded indemnification for the damage which resulted at the Bluefield facility.

Before the exclusion clause could be legally incorporated into the commercial general liability policy in West Virginia, it was necessary that Liberty Mutual obtain the approval of the West Virginia Insurance Commissioner. Before incorporating the exclusion clause, in accordance with West Virginia law, Liberty Mutual submitted the exclusion language to the West Virginia Insurance Commissioner for his approval.

The West Virginia Insurance Commissioner held hearings to consider the proposed exclusionary language. The record shows that, in conjunction with the submissions, the Insurance Rating Board and apparently also the Mutual Insurance Rating Board, acting on behalf of their members and subscribers, including Liberty Mutual, included with their submission of the pro-

posed exclusion language an explanation which stated:

> Coverage for pollution or contamination is not provided in most cases under present policies because the damages can be said to be expected or intended and thus are excluded by the definition of occurrence. The above exclusion [the exclusion which is in issue in the present case] clarifies this situation so as to avoid any question of intent. Coverage is continued for pollution or contamination caused injuries when the pollution or contamination results from an accident ...

In this Court's view, the insurance industry thus represented to the State of West Virginia, acting through the West Virginia Commissioner of Insurance, that the exclusion which is in issue in the present case merely clarified the pre-existing "occurrence" clause.

This conclusion is further supported by an affidavit submitted by the former West Virginia Insurance Commissioner, who officially authorized the inclusion of the exclusion in West Virginia policies. That affidavit stated that "in preliminary submissions on the matter, the insurers represented that the proposed forms did not limit and were not intended to limit the coverage." The Commissioner also said in the affidavit that:

> The insurers stated in pre-hearing submissions, at the hearing, and in post-hearing submissions that the proposed endorsement forms did not limit or narrow coverage and were not intended to do so. Based upon those representations, I concluded that the pollution endorsement forms did not narrow or limit coverage and, instead, were mere clarifications of existing coverage as defined and limited by the definition of the term "occurrence." Accordingly, I approved the endorsement forms IRB 335 and MIRB MB G008 submitted respectively by the Insurance Rating Board and the Mutual Insurance Rating Bureau.

In the written order approving the pollution exclusion, the West Virginia Insurance Commissioner stated:

> (1) The said companies and rating organizations have represented to the Insurance Commissioner, orally and in writing, that the proposed exclusions ... are merely clarifications of existing coverage as defined and limited in the definitions of the term "occurrence", contained in the respective policies to which said exclusions would be attached;
>
> (2) To the extent that said exclusions are mere clarifications of existing coverages, the Insurance Commissioner finds that there is no objection to the approval of such exclusions;

In this Court's view, it appears clear from the foregoing discussion that the 1966 commercial general liability insurance policies, as originally issued, covered gradual bodily injury and gradual property damage resulting over a period of time from exposure to the insured's waste disposal, as was suggested by Mr. Bean in the memorandum issued in conjunction with the drafting of the policies. They, however, as originally issued, excluded damage resulting from expected and intended pollution, as indicated by the Insurance Rating Board and the Mutual Insurance Rating Board in their 1970 filings with the West Virginia State Insurance Commissioner. Further, from the filings it is clear that in seeking approval of the exclusion provision, the insurance companies did not represent that they intended to exclude any risk which was not excluded in the original policies, but that they merely intended to clarify what had been excluded in the original policies. In approving the new policy language, the West Virginia Insurance Commissioner specifically stated that the companies and rating organizations had represented that the proposed exclusions were mere clarifications of existing coverage, and in approving the language the Insurance Commissioner approved it only "to the extent that said exclusions are mere clarifications of existing coverages."

This Court has recognized that where a definite meaning has been ascribed to language used in an insurance policy, that meaning should be given to the language by the courts. *Christopher v. United States Life Insurance Company in City of New York*, 145 W.Va. 707, 116 S.E.2d 864 (1960). In view of this, and in view of

the fact that in the present case the insurance group representing Liberty Mutual unambiguously and officially represented to the West Virginia Insurance Commission that the exclusion in question did not alter coverage under the policies involved, coverage which included the injuries in the present case, this Court must conclude that the policies issued by Liberty Mutual covered pollution damage, even if it resulted over a period of time and was gradual, so long as it was not expected or intended.[4]

The evidence in the present case shows that Joy Technologies neither expected nor intended the pollution damage which occurred in the present case.

The summary judgment of the Circuit Court of Mercer County is, therefore, reversed, and this case is remanded for development on the issues not considered in conjunction with Liberty Mutual's summary judgment motion and not discussed herein.

Reversed and remanded with directions.

---

**4.** The Court notes that a number of other courts have concluded that the so-called "exclusion policy" involved in the present case merely clarified the coverage provided under the definition of insurance in the 1966 commercial general liability policy. *See Claussen v. Aetna Casualty & Surety Co.,* 259 Ga. 333, 380 S.E.2d 686 (1989); *United States Fidelity & Guaranty Co. v. Specialty Coatings Co.,* 180 Ill.App.3d 378, 129 Ill.Dec. 306, 535 N.E.2d 1071 (1989); *Broadwell Realty Services, Inc. v. Fidelity & Casualty Co.,* 218 N.J.Super. 516, 528 A.2d 76 (1987).