PEN COAL CORPORATION, a Tennessee corporation, Plaintiff,

v.

WILLIAM H. McGEE AND CO., INC., a New York corporation, and Phoenix Assurance Co. of New York, a New York corporation, Defendants.

Civ. A. No. 3:95–0151.

United States District Court, S.D. West Virginia, Huntington Division.

Oct. 19, 1995.

Thomas A. Heywood, Benjamin L. Bailey, Charleston, WV, for Plaintiff.

Thomas W. Pettit, Stephen W. Graffam, Dennis A. Watson, Marty Young Brown, Huntington, WV, for Defendant.

## MEMORANDUM OPINION AND ORDER

GOODWIN, District Judge.

Pending before the Court is the defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and to transfer this case to the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a). For the reasons outlined below, the Court **DENIES** the defendants' motion to dismiss and the defendants' motion to transfer.

### I. Background

The plaintiff Pen Coal Corporation (Pen Coal), with headquarters in Tennessee, operates two coal loading docks, one located in Wayne County, West Virginia, and the other located in Boyd County, Kentucky. Between August 1, 1993 and August 1, 1994, the defendant Phoenix Assurance Company of New York (Phoenix) insured both of these loading docks and a coal storage facility also located in West Virginia under a commercial industrial insurance policy. Although Phoenix insured these risks under one insurance policy, the declaration pages indicate that Phoenix valued the three risks separately. Among other things, the insurance policy provided that Phoenix would "pay for direct physical loss of or damage to covered property at the premises described...."

During late 1993 and early 1994, the West Virginia and Kentucky docks each sustained damage when the Big Sandy River flooded. Pen Coal incurred expenses exceeding $900,-000 to repair the West Virginia dock and exceeding $100,000 to repair the Kentucky dock. Pen Coal filed claims with Phoenix to recover the expenses incurred in making these repairs. The defendant William H. McGee and Company, Inc. (McGee), whose relationship to Phoenix is unclear, denied both claims.

Pen Coal has filed this lawsuit against McGee and Phoenix. Pen Coal alleges that in denying insurance coverage for damage to

the West Virginia and Kentucky docks, the defendants: (1) breached their insurance contract with Pen Coal; (2) breached the covenant of good faith and fair dealing implied in the insurance contract; and (3) engaged in bad faith and unfair trade practices in violation of § 33–11–3 of the West Virginia Code.

## II. Choice of Law

■ Before addressing the substantive arguments in the defendants' motion to dismiss, the Court must determine what law to apply to these disputes. The defendants removed this case to federal court because there is diversity of citizenship and the amount in controversy for each claim exceeds $50,000. The Court therefore must apply the choice of law rules of West Virginia, the state in which this Court sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). The defendants argue that West Virginia courts would apply the law of Tennessee to these disputes because Tennessee is the place where the insurance contract was executed. The plaintiff, by contrast, argues that West Virginia courts would apply the law of West Virginia, the state in which the greatest damage occurred. The Court disagrees with both positions. For the reasons outlined below, the Court concludes that West Virginia courts would apply West Virginia law to the dispute involving the West Virginia dock and Kentucky law to the dispute involving the Kentucky dock.

In its Complaint, Pen Coal pleads this case as if it raises a single claim against the defendants. A review of the facts, however, reveals that Penn Coal raises two separate and distinct claims against the defendants— one arising out of damage to the West Virginia dock and one arising out of damage to the Kentucky dock. Just because the defendants insured the docks under one insurance policy, the docks are in close proximity to one another (approximately three miles apart), and the defendants denied both claims for the same reason does not make them one claim.

■ The first step in any choice-of-law analysis is to characterize the issues involved. The counts alleging breach of the insurance contract and breach of the implied covenant of good faith and fair dealing clearly implicate choice-of-law principles applicable to contracts because they raise insurance coverage, rather than liability, issues. *Lee v. Saliga,* 179 W.Va. 762, 373 S.E.2d 345, 349 (1988). The bad faith and West Virginia Unfair Trade Practices Act claim, on the other hand, can be characterized as part-contract and part-tort: part-contract because such claims do not arise in the absence of an insurance contract and part-tort because such claims can be brought by third parties and result in awards of tort-like damages.

For the purpose of choice-of-law analysis, however, bad faith and unfair trade practices claims properly should be characterized as contract, not tort, claims. *See generally Nowsco Well Service, Ltd. v. Home Insurance Co.,* 799 F.Supp. 602 (S.D.W.Va.1991) (characterizing insurance bad faith allegation as contract question for choice-of-law analysis), *aff'd,* 974 F.2d 1331 (4th Cir.1992); *Lee v. Saliga, supra* (analyzing tort and contract law issues in insurance coverage dispute as contracts issue for purpose of conflict analysis). First, such claims do not arise in the absence of an insurance contract. Second, identifying the place of wrong in the bad faith and unfair trade practices context, which a court must do if it characterizes such claims as tort claims, can be extremely difficult. *See* syl. pt. 1, *Paul v. National Life,* 177 W.Va. 427, 352 S.E.2d 550 (1986) (adopting *lex loci delicti* for torts). After all, the place of wrong could be the place where the bad faith or unfair claims practices occurred, the location of the office of the insurance agent or adjustor, the place where the insured suffered the economic loss, or the location of the insured property. *See* Douglas G. Houser, *Choice of Law for Bad Faith Insurance Claims,* 30 Tort & Ins. L.J. 37, 40 (1994). Third, characterizing such claims as contract claims avoids the possibility that a contract characterization for a portion of a claim and a tort characterization for a portion of a claim would lead to application of two states' laws to the same claim.

Although the West Virginia Supreme Court of Appeals has never expressly adopted the *Restatement (Second) of Conflict of Laws* (Restatement (Second)) for deter-

mining what law to apply in contracts cases, the court has often relied on it when resolving conflicts questions. *See, e.g., Nadler v. Liberty Mutual Fire Insurance Co.*, 188 W.Va. 329, 424 S.E.2d 256 (1992); *Joy Technologies, Inc. v. Liberty Mutual Insurance Co.*, 187 W.Va. 742, 421 S.E.2d 493 (1992); *Liberty Mutual Insurance Co. v. Triangle Industries Cos.*, 182 W.Va. 580, 390 S.E.2d 562 (1990); *Lee v. Saliga, supra.* Under the Restatement (Second), the law of the state with the most significant relationship to the dispute governs unless the parties' contract contains a choice-of-law provision. Restatement (Second) §§ 186–88 (1971 & Supp. 1989). States with a relationship to the dispute include the place of contracting (Tennessee), the place of negotiation of the contract (Tennessee, Kentucky, and possibly other states), the place of performance (Tennessee and/or West Virginia and Kentucky), the location of the subject matter of the contract (West Virginia and Kentucky), and the domicile, residence, nationality, place of incorporation, and place of business of the parties (Tennessee, New York, West Virginia, and Kentucky). *Id.* § 188.

There is a paucity of case law on the precise insurance coverage issue that is the subject of this litigation in each of the states with an interest in this dispute. Even so, it is evident that an apparent conflict exists among the interested states in their resolution of insurance coverage disputes, particularly in the area of bad faith and unfair trade practices, the subject of Count III of Pen Coal's Complaint. West Virginia, for example, permits insureds to recover punitive damages for willful, malicious, and intentional violations of its Unfair Trade Practices Act, *see* syl. pt. 3, *Poling v. Motorists Mutual Insurance Co.*, 192 W.Va. 46, 450 S.E.2d 635 (1994), while Tennessee permits insureds to recover treble damages for willful and knowing violations of its Consumer Protection Act. *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 591 (Tenn.Ct.App.1980). Based on its analysis of the laws of the interested states, the Court concludes that there is a conflict sufficient to justify an extensive choice-of-law analysis, even though the Court is uncertain at this early point in the litigation whether the choice-of-law issue will ultimately make a difference in the outcome of this litigation.

## A. In Search of a Rule

Over the last several decades, many states have adopted methods of analysis, rather than rules, to resolve choice-of-law disputes. *See* Eugene F. Scoles & Peter Hay, *Conflict of Laws* 15–41 (2d ed.1992). Even though the West Virginia Supreme Court of Appeals, as discussed below, has not resisted this trend completely, the court always has preferred to resolve such disputes based on rules. *Paul*, 352 S.E.2d at 554. As Justice Neely explained in *Paul:* "The lesson of history is that methods of analysis ... produce protracted litigation and voluminous, inscrutable appellate opinions, while rules get cases settled quickly and cheaply." *Id.*

The drafters of the Restatement (Second) supplemented the sections outlined in the preceding section with §§ 188(3) and 189–221. The purpose of these sections is to provide courts with guidelines for determining which state has the most significant relationship to a dispute. The state supreme court generally has relied on these sections to develop rules that can be rebutted by a showing that another state has a more significant relationship to the dispute or that application of another state's law is contrary to West Virginia public policy. *See* syl. pts. 2 & 3, *Nadler*, 424 S.E.2d at 258; *Triangle Industries*, syl. pt., 390 S.E.2d at 563. In *Michigan National Bank v. Mattingly*, 158 W.Va. 621, 212 S.E.2d 754 (1975), for example, the supreme court adopted the following rule to govern choice of law in contracts cases: "The law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this State." *Id.* at syl. pt. 1. This rule closely parallels Restatement (Second) § 188(3). Similarly, in *New v. Tac & C Energy, Inc.*, 177 W.Va. 648, 355 S.E.2d 629 (1987), the court adopted § 196 as a rule to resolve a choice-of-law dispute. *Id.*, 355 S.E.2d at 631.

The Court believes that the state supreme court would adopt § 193 of the Restatement (Second) as its rule for resolving

choice-of-law disputes in the context of coverage disputes involving fire, surety, or casualty insurance policies. Section 193 provides in relevant part: "The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy...." Under § 193, there is a presumption that West Virginia law should govern the claim regarding the West Virginia property and that Kentucky law should govern the claim regarding the Kentucky property.

The defendants rely heavily upon the opinion of the West Virginia Supreme Court of Appeals in *Liberty Mutual Insurance Co. v. Triangle Industries Cos.*, 182 W.Va. 580, 390 S.E.2d 562 (1990). Like this case, *Triangle Industries* involved an insurance coverage dispute. The Environmental Protection Agency notified Triangle Industries in 1984 that it was being designated a potentially responsible party for environmental contamination caused by sludge that Triangle Industries had transported from its plant in Glen Dale, West Virginia, to a landfill in St. Clairsville, Ohio. Triangle Industries claimed that Liberty Mutual owed a duty to defend and indemnify the company under a comprehensive general liability policy issued in New Jersey, but covering the insured's risks in "numerous ... locations." *Id.*, 390 S.E.2d at 566. The state supreme court concluded that New Jersey law, not West Virginia or Ohio law, applied to the interpretation of the policy.

It is important to note that § 193 of the Restatement (Second) did not apply to the facts in *Triangle Industries* because *Triangle Industries* involved a comprehensive general liability policy insuring risks in any number of different states. In other words, there was no "principal location of the insured risk" in *Triangle Industries*. The *Triangle Industries* court therefore adopted the following rule for such situations:

In a case involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of the formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state.

Syl. pt., *Triangle Industries*, 390 S.E.2d at 563. The defendants argue that the Court should apply that rule in this case and thus Tennessee law to these disputes. This argument fails for several reasons.

First and foremost, this case involves insurance coverage for property continuously located at Pen Coal's docks in Kentucky and West Virginia. The insurance policy at issue here covers "physical loss of or damage to covered property at the premises described...." It did not cover loss or damage once the property left the premises. Courts almost universally apply the law of the state that is the situs of the property for property continuously located in one place. Scoles & Hay, *supra*, at 743.

The comprehensive general liability policy in *Triangle Industries*, on the other hand, covered insured property regardless of location. In such cases, transaction costs might be unreasonably high were courts to "require [insurance companies and policyholders] to negotiate individual policies based upon each state where an insured risk is located." *Triangle Industries*, 390 S.E.2d at 567. Pen Coal and the defendants, by contrast, clearly isolated the insured risks in this policy for purposes of valuation. Concerns about transaction costs thus do not inhere in these disputes.

Second, the argument assumes that the state supreme court, despite its long history of adopting Restatement (Second) provisions as rules, would not do so in this case. Only when there has been no Restatement (Second) rule on point, as in *Triangle Industries*, has the court created its own rule. Third, arbitrary application of the rule enunciated in *Triangle Industries* could lead to bizarre results. Assume, for example, that a West Virginia property owner purchased a fire insurance policy on West Virginia property while in Virginia on vacation. A strict interpretation of the syllabus point in *Triangle Industries* would lead to a presumption that Virginia law would apply to the dispute. Surely the supreme court did not intend such

a broad reading for its holding in *Triangle Industries*.

■ For the foregoing reasons, the Court concludes that the state supreme court, if asked to address this question, would restrict its holding in *Triangle Industries* to comprehensive general liability policies covering risks in numerous states. When the insurance policy isolates immovable risks for coverage, however, the state supreme court, consistent with past practice, would adopt Restatement (Second) § 193 as its rule. Accordingly, the Court holds that the local law of the states which the parties understood were to be the principal locations of the insured risks during the term of the policy—West Virginia and Kentucky—presumptively govern this dispute.

## B. "Most Significant Relationship" Test

■ Justice Neely's protestations to the contrary, the West Virginia Supreme Court of Appeals has not rejected methods of analysis completely. *See Paul*, 352 S.E.2d at 554 (noting preference for rules to govern choice-of-law disputes). In the area of contracts, the court has created exceptions to choice-of-law rules when another state has a more significant relationship to a dispute. *See, e.g.,* syl. pt., *Joy Technologies*, 421 S.E.2d at 493; syl. pt., *Liberty Mutual*, 390 S.E.2d at 563. The defendants argue that Tennessee has the most significant relationship to these disputes. Factors to consider under the Restatement (Second) in determining which state has the most significant relationship include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. *Id.* § 6(2). These factors clearly favor application of West Virginia and Kentucky law, rather than Tennessee law, to these disputes.

Factors (b) and (c) involve consideration of the relevant policies and interests of those states with relevant contacts to this dispute. In the parlance of governmental interest analysis, this case presents a classic false conflict. *See* Robert A. Leflar et al., *American Conflicts of Law* § 92 (4th ed.1986). West Virginia and Kentucky have interests that would be furthered by application of their laws to this dispute; Tennessee does not. As the locations of the insured risks, West Virginia and Kentucky have strong interests in seeing that the insured property is repaired. When insurers deny coverage, they jeopardize these interests. West Virginia and Kentucky also have interests in seeing that insurers who do business in their states do not engage in unfair trade practices to defeat the claims of policyholders who also do business in their states.

Tennessee has an interest in protecting the plaintiff Pen Coal because Pen Coal's headquarters is in Tennessee. But this case does not implicate that interest. Pen Coal has filed suit in West Virginia and asks the court to apply West Virginia law to these disputes. Pen Coal apparently believes that West Virginia's law will provide it with greater protection than Tennessee's law. In summary, this case presents the Court with a false conflict. While Tennessee may have an interest in this litigation, that interest is not "relevant" within the meaning of § 6.

Factor (d) involves consideration of the parties' justified expectations. The defendants argue that the parties expected Tennessee law to apply to any dispute over insurance coverage between the parties. The defendants point to the location of Pen Coal's corporate offices, the fact that decisions regarding procurement of insurance were made in Tennessee, and an insurance policy endorsement referring to Tennessee as support for their contention. Three points weaken the defendants' argument. First, the language of § 193 illustrates that it is generally reasonable to apply the law of the state where the risk was permanently located to insurance disputes. *See* Restatement (Second) § 193 cmt. c; *see also Mitchell v. State Farm Fire & Casualty Co.*, 902 F.2d 790, 794 (10th Cir.1990) ("[T]he location of an insured property is not merely one factor to be balanced against others in determining

the law governing the parties' rights under an insurance contract. Instead, it is the single most important factor in making this choice-of-law determination ... and, as the case law demonstrates, is almost invariably controlling").

Second, had the parties wished to assure application of Tennessee law to any coverage disputes, they could have inserted a choice-of-law provision selecting Tennessee law into the insurance contract. When modern choice-of-law approaches such as the Restatement (Second) and governmental interest analysis leads to application of the law of a state other than that which the parties intend, insertion of a choice-of-law provision in the contract is especially important. The absence of such a provision in this case makes unclear the expectations of the parties.

Third, the Court finds dubious the defendants' assertion that an insurance company licensed to do business in West Virginia that issues a casualty insurance policy covering physical damage to property located solely in West Virginia would not reasonably have expected to find itself subject to West Virginia law. The same obviously holds true as to the Kentucky risk. These three points mitigate the importance of factor (d) in relation to the other factors in § 6.

Factor (f) involves consideration of certainty, predictability, and uniformity of results. The best way to assure certainty, predictability, and uniformity is to reach the same result that those states that have adopted the Restatement (Second) or governmental interest analysis would reach in resolving choice-of-law disputes. Under either approach, the Court would apply West Virginia law to the West Virginia dispute and Kentucky law to the Kentucky dispute.

Factor (e) involves consideration of the basic policies underlying the particular field of law. Almost all states treat insurance contracts as adhesion contracts and construe ambiguous policy provisions against the insurer. Insurance law is aimed primarily at protecting policyholders.[1] Pen Coal and the defendants both clearly believe that West

Virginia law better protects policyholders than does Tennessee law. Factor (g) involves consideration of the ease in the determination of the law to be applied. This Court, of course, finds West Virginia law the easiest law to determine and apply. Factors (e) and (g), which the Court views as far less important than the previously discussed factors, favor application of West Virginia law to the West Virginia dispute.

Pen Coal argues that the Court should apply West Virginia law to both of these disputes because the greater of the two losses occurred in West Virginia. The Court recognizes that this path, much like the path proposed by the defendants, would permit the Court to apply one state's law to both disputes. Pen Coal's proposal fails because of interstate considerations, the subject of factor (a). At best, West Virginia has only a minimal interest in the dispute involving the Kentucky property. To apply West Virginia law to that dispute would raise constitutional concerns under the Due Process Clause and the Full Faith and Credit Clause because West Virginia arguably does not have "a significant contact or aggregation of contacts" to the Kentucky dispute. *Allstate Insurance Co. v. Hague,* 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981). The Court believes that the West Virginia Supreme Court of Appeals would avoid infringing upon Kentucky's sovereignty and would apply Kentucky law to the dispute involving the Kentucky property.

Because none of the factors listed in § 6 points strongly in favor of applying Tennessee law, the Court concludes that the defendants have failed to establish that Tennessee has a more significant relationship to these disputes than do West Virginia and Kentucky. Likewise, the plaintiff has not presented persuasive evidence that the West Virginia Supreme Court of Appeals would apply West Virginia law to both disputes. Accordingly, the Court will apply West Virginia law to the West Virginia dispute and Kentucky law to the Kentucky dispute.

1. This is why the domicile of an insurer—New York in this case—is generally not considered to be a significant when determining what law to apply in resolving insurance coverage disputes.

### III. Motion to Dismiss

■ In ruling on the motion to dismiss, the Court is governed by the holding of the United States Court of Appeals for the Fourth Circuit in *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994):

> In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.

Furthermore, the Court should not grant a motion to dismiss solely because of minor defects in pleading. As the United States Supreme Courts explained in *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957): "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *See also Rogers v. Jefferson–Pilot Life Insurance Co.,* 883 F.2d 324, 325 (4th Cir.1989).

### A. McGee's Role

■ The defendant McGee seeks dismissal of all counts against it on the ground that it is not a party to the insurance policy, but rather an agent of the defendant Phoenix. As a general rule, the agent of an insurance company is not liable for breach of a contract to which the agent is not a party. *See generally Couch on Insurance 2d* § 26A:293 (rev. ed.1984). Pen Coal cites no cases from West Virginia or Kentucky or beyond that hold otherwise. Even so, an insurance agent may be held liable to an insured when its conduct rises to the level of an independent tort. *See generally Couch* § 26A:293.

■ Pen Coal contends that the Court should deny McGee's motion to dismiss the contract claims against McGee because McGee's role in these disputes is "something of a mystery." A cursory review of the exhibits attached to Pen Coal's Complaint supports this contention. The insurance policy lists McGee's name directly below Phoenix's name. The letters denying coverage are on McGee letterhead. In fact, the letter dated September 28, 1994, states: "You have made a claim of Wm. H. McGee & Company, Inc. ("McGee") stemming from erosion to the river bank on real property you own and operate as the Wayne County River Terminal Coal Loading Dock.... We respectfully decline coverage for the remediation you performed to the river bank...."

McGee's role in this litigation is unclear. Viewing the allegations in the light most favorable to Pen Coal, the Court finds that Pen Coal may have contract and tort causes of action against McGee. The Court therefore denies McGee's motion to dismiss on this ground.

### B. Unfair Trade Practices/Bad Faith

■ Count III of Pen Coal's Complaint alleges that the defendants have engaged in bad faith and unfair trade practices in violation of W.Va.Code § 33–11–4(9) in denying Pen Coal's claims. At the time that the Complaint was drafted, Pen Coal obviously believed that the Court would apply West Virginia law to both of these disputes. Therefore, the Complaint makes no reference to violations of Kentucky law. Although the Court could construe Count III broadly to allege a claim under Kentucky law, the Court believes that the better policy is to grant Pen Coal leave to amend its Complaint to separate the West Virginia claim from the Kentucky claim and to allege a violation of Kentucky law, if Pen Coal so desires. At this stage, the Court will consider the defendants' motion to dismiss Count III only as it relates to the West Virginia claim.

■ First, the defendants ask the Court to dismiss Count III on the ground that a claim for bad faith or for a violation of the West Virginia Unfair Trade Practices Act cannot be brought until the underlying action is resolved. This argument is without merit. The West Virginia Supreme Court of Appeals recently held that a third party may join a bad faith settlement practices claim

against an insurer to a liability claim against a policyholder as long as the claim against the insurer is bifurcated from the claim against the policyholder. Syl. pt. 3, *State ex rel. State Farm Fire & Casualty Co. v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1994). A policyholder surely then may bring breach of contract and bad faith claims against its own insurer.

■ Second, the defendants ask the Court to dismiss Count III on the ground that Pen Coal bases its unfair trade practices claim on an isolated incident. To establish a private cause of action under West Virginia's Unfair Trade Practices Act, a plaintiff must show that a defendant committed certain acts "with such frequency as to indicate a general business practice." W.Va.Code § 33–11–4(9) (1992). Pen Coal alleges: "McGee and Phoenix have knowingly committed and performed, with such frequency as to indicate a general business practice, one or more of the following acts...." (Complaint ¶ 32). Assuming this allegation to be true, as the Court must, the Court concludes that Pen Coal has made out an unfair trade practices claim and that dismissal is inappropriate.

## C. Punitive Damages

■ Finally, the defendants ask the Court to dismiss the punitive damages claim set forth in Count III on the ground that Pen Coal has failed to allege facts sufficient to support such a claim. The state supreme court has held that an insurance company may be liable for punitive damages for its refusal to pay on a claim if "such refusal is accompanied by a malicious intention to injure or defraud." Syl. pt. 2, *Hayseeds, Inc. v. State Farm Fire & Casualty*, 177 W.Va. 323, 352 S.E.2d 73 (1986). To meet this standard, a policyholder must show "that the company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim." *Id.*, 352 S.E.2d at 80–81. The state supreme court has also expressly held that punitive damages may be awarded for violations of W.Va.Code § 33–11–4(9). Syl. pt. 3, *Poling v. Motorists Mutual Insurance Co.*, 192 W.Va. 46, 450 S.E.2d 635 (1994). To meet this standard, a policyholder must show that

the insurer knew the insured's claim was proper but willfully, maliciously, and intentionally delayed payment in order to attempt to obtain a less than just settlement. *Id.*, 450 S.E.2d at 638.

■ Count III of Pen Coal's Complaint alleges that the defendants "knowingly committed and performed" certain acts in violation of § 33–11–4(9), including failing to effectuate prompt settlements of claims in which liability had become reasonable clear. (¶ 32). Count III further alleges that the defendants' conduct constitutes bad faith. (¶ 34). While Pen Coal's punitive damages claim is not well pled, the allegations in the Complaint are sufficient to survive a motion to dismiss. Accordingly, the Court denies the defendants' motion to dismiss Pen Coal's punitive damages claim.

## IV. Motion to Transfer

■ The defendants seek to have this case transferred, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Middle District of Tennessee. In support of their motion, the defendants first argue that Tennessee law governs these disputes and that a Tennessee court is better able than a West Virginia court to apply Tennessee law. Because this Court has determined that West Virginia and Kentucky law will govern these disputes, the defendants' first argument is moot.

Second, the defendants argue that Tennessee is a more convenient forum because Pen Coal's headquarters and corporate officers are located in Tennessee. Had Pen Coal sought to transfer this case to Tennessee, the Court might have found this argument persuasive. From the defendants, however, this argument rings hollow. Most important, a majority of potential witnesses reside closer to this Court than to a Tennessee court. Half of the witnesses that Pen Coal has identified as having discoverable information about these disputes reside in West Virginia. Witnesses from New York, Ohio, and Kentucky likely also would find a West Virginia court, rather than a Tennessee court, more convenient. Furthermore, although Pen Coal has its corporate headquarters in Tennessee, Pen Coal's principal place of business

990

is West Virginia. Finally, Pen Coal chose to bring its action in West Virginia and to invoke the jurisdiction of the West Virginia courts. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (stating that plaintiff's choice of forum should be accorded considerable weight). Accordingly, the Court denies the defendants' motion to transfer.

### V. Conclusion

For the reasons set forth, the Court **DENIES** the defendants' motion to dismiss and motion to transfer. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.