SINCLAIR OIL CORPORATION,
a Wyoming corporation,
Appellant (Plaintiff),

v.

REPUBLIC INSURANCE COMPANY,
a Delaware corporation, Appellee
(Defendant).

SINCLAIR OIL CORPORATION,
a Wyoming corporation,
Appellant (Plaintiff),

v.

ROYAL INSURANCE COMPANY OF
AMERICA, a North Carolina corpora-
tion, formerly Royal Globe Insurance
Company; and Safeguard Insurance
Company, a Connecticut corporation,
Appellees (Defendants).

No. 95–62.

Supreme Court of Wyoming.

Dec. 30, 1996.

Rehearing Denied Jan. 21, 1997.

John B. "Jack" Speight, Robert T. McCue,
and Dominique D.Y. Cone of Hathaway,

# 536

Speight & Kunz, Cheyenne, Jack E. Stanfield of Smith, Stanfield & Scott, Laramie, Robert N. Sayler of Covington & Burling, Washington, D.C., Brent Manning of Holme, Roberts & Owen, Salt Lake City, UT, for Appellant.

William U. Hill, Attorney General; Mary B. Guthrie, Deputy Attorney General; and Keith Burron, Assistant Attorney General, Cheyenne, for Amicus Curiae State of Wyoming (in support of Appellant).

J. Kent Rutledge and Loyd E. Smith of Lathrop & Rutledge, Cheyenne, Charles K. O'Neill, James C. LaForge, and Timothy M. Hughes of Chadbourne & Parke, New York City, for Appellee Republic Insurance Company.

Thomas A. Nicholas of Hirst & Applegate, Cheyenne, Donald T. McMillan and Christopher A. Crevasse of Rivkin, Radler & Kremer, Santa Rosa, CA, for Appellees Royal Insurance Company of America and Safeguard Insurance Company.

Jon T. Dyre of Crowley, Haughey, Hanson, Toole & Dietrich Billings, MT, for Amicus Curiae Insurance Environmental Litigation Association (in support of Appellees). Of Counsel: Laura A. Foggan, Daniel E. Troy, and Edward J. Grass of Wiley, Rein & Fielding, Washington, D.C.

Gregory C. Dyekman of Dray, Madison & Thomson, P.C., Cheyenne, Edward Zampino and Peter E. Mueller of Harwood Lloyd, Hackensack, NJ, for Amicus Curiae The Aetna Casualty & Surety Company (in support of Appellees).

Before TAYLOR, C.J., THOMAS, GOLDEN * and LEHMAN, JJ., and KAUTZ, District Judge.

THOMAS, Justice.

The issues in this case come before the court as certified questions from the United States District Court for the District of Wyoming. The court is called to furnish a definitive legal connotation to phrases in exclusions clauses of commercial insurance policies that preserve coverage for "sudden and accidental" discharges of pollutants. Our study of the problem persuades us that these words are not ambiguous, and as used in these policies, the phrases encompass a temporal aspect that must coincide with an accidental occurrence to the end that such a discharge must be caused by an abrupt and unforeseen event that occurs unexpectedly, without notice, or with very brief notice. The certified questions are answered more definitively in the body of this opinion, and the case is returned to the United States District Court for the District of Wyoming for such further proceedings as it may deem appropriate.

The questions that were certified to this court, pursuant to WYO. STAT. § 1–13–104 through 107 (1988) [1] are:

1. Whether, in the commercial insurance policies at issue, the language of the exclusion clauses that preserve coverage for "sudden and accidental" discharges of pollutants applies to gradual and unintention-

---

* Chief Justice at the time of oral argument.

1. The cited statutes provide (emphasis added):

**1–13–104. Questions from federal courts; generally.** W.S. 1–13–104 through 1–13–107 is cited as the "Federal Court State Law Certificate Procedure Act".

**1–13–105. Questions from federal courts; definitions.**

(a) As used in this act [ §§ 1–13–104 through 1–13–107]:

(i) "Certificate procedure" means the procedure authorized herein by which a federal court in disposing of a cause pending before it submits a question of state law to the supreme court for determination;

(ii) "Federal court" means any court of the United States of America including the supreme court of the United States, courts of appeal, district courts and any other court created by act of congress;

(iii) "Supreme court" means the supreme court of Wyoming.

**1–13–106. Questions from federal courts; authority of supreme court.** The supreme court may answer questions of law certified to it by a federal court when requested by the certifying court if there are involved in any proceeding before the federal court questions of law of this state which may be determinative of the cause then pending in the federal court, and as to which it appears to the federal court there is no controlling precedent in the existing decisions of the supreme court.

**1–13–107. Questions from federal courts; rules.** The supreme court may adopt rules of practice and procedure to implement or otherwise facilitate utilization of certificate procedure.

al discharges of pollutants. In other words, whether "sudden" has a temporal meaning;

2. Whether the undefined phrase "sudden and accidental" is ambiguous in the context of the exclusion clauses in the commercial policies at issue.

The parties and those filing briefs as *amicus curiae* were faithful to these statements of the questions certified when setting forth the issues presented for review. In the plethora of materials that were filed with this court, however, they were not disciplined with respect to the requirements of our certification rules in articulating their respective statements of the facts. We emphasize the language of Wyo. R. App. P. 11.03 (emphasis added):

A certification order shall set forth:

(a) The questions of law to be answered;

(b) **A statement of all facts relevant to the questions certified;**

(c) The nature of the controversy in which the questions arose; and

(d) A designation of the party or parties who will be the appellant(s), i.e. the party holding the affirmative, in the appellate court.

This court has the opportunity to expand upon the "statement of all facts relevant to the questions certified" by invoking Wyo. R. App. P. 11.04, which provides in pertinent part:

The reviewing court may require the original or copies of all, or of any portion of the record before the certifying court, to be filed under the certification order, if, in the opinion of the reviewing court, the record or any portion may be necessary in answering the questions.

We did not, however, avail ourselves of that opportunity. Consequently we rely exclusively upon the Certification Order from the United States District Court for the District of Wyoming to the Supreme Court of the State of Wyoming, which set forth these facts:

### Statement of Facts

This declaratory judgment action involves the question of insurance coverage for alleged pollution contamination damages under insurance policies issued by the defendants. The policies all covered the LARCO refinery operation. The refinery is located near Casper, Wyoming and is currently operated by Sinclair. Various entities have made claims against Sinclair based upon allegations the refinery operations resulted in pollution contamination.

Sinclair has generally contested the contamination claims by disputing the existence, extent, cause, and timing of the alleged pollution contamination. However, it has settled with at least one group of claimants.

Defendants Royal Insurance Company and Safeguard Insurance Company issued general liability policies. Defendant Republic issued excess umbrella liability policies. Republic's umbrella liability policies were excess to primary liability coverage provided by a nonparty to these cases. Republic's umbrella policies cover different years than do the Royal and Safeguard general liability policies.

The Republic policies all provide:

1. COVERAGES: To indemnify the Insured for all sums which the insured shall be obligated to pay by reason of the liability imposed upon him by law or liability assumed by him under contract or agreement for damages, and expenses, all as included in the definition of "ultimate net loss" because of

(a) personal injury,

(b) property damage,

(c) advertising liability

as defined herein and caused by or arising out of an occurrence anywhere in the world.

The Republic policies all define "occurrence" as:

(a) an accident, or (b) an event, or continuous or repeated exposure to conditions which results during the policy period, in personal injury, property damage, or advertising liability (either alone or in combination) neither expected nor intended from the standpoint of the insured.

Two of the three Republic policies contain the following exclusion:

It is agreed that this policy does not apply to liability for personal injury or property damage arising out of the discharge, dispersal, release, escape or seepage of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, unless such discharge, dispersal, release or escape is sudden and accidental.

The third Republic policy contains the following exclusion:

It is understood and agreed that this policy does not apply to liability for personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, oil, petroleum substance or derivative, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants. This exclusion does not apply to the pollution of the land or atmosphere if such discharge, dispersal, release or escape is sudden and accidental.

It is further understood and agreed as respects the discharge, dispersal, release, escape or seepage of smoke, soot, vapors, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon any non-navigable body of water or watercourse from the operation of an oil or gas pipeline by the Named Insured this policy shall apply as is [sic] such discharge, dispersal, release, escape or seepage had emanated into or upon land or the atmosphere. This clause shall apply only if such discharge, dispersal, release, escape or seepage is sudden or accidental.

The Royal and Safeguard policies provide:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A, bodily injury or

Coverage B, property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . .

The Royal and Safeguard policies define "occurrence" as:

An accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

The Royal and Safeguard policies contain the following exclusion:

This insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

### The Parties' Contentions

The parties dispute the meaning and effect of the definition of "occurrence" and whether the term "sudden and accidental" is ambiguous.

Plaintiff contends: (1) under the definition of "occurrence," bodily injury or property damage which is the result of unintentional contamination is covered even if the alleged contamination occurs gradually; and, (2) the term "sudden and accidental" is ambiguous and therefore must be construed in favor of the insured. Plaintiff contends the term is ambiguous because although sudden can mean "abrupt" or "happening quickly" it can also mean "unexpected."

Defendants contend that under the exclusion provisions there is no coverage for damages caused by the gradual discharge

of pollutants. Defendants contend: (1) the word "sudden" in the policies' exclusion clauses is not ambiguous; (2) under its plain meaning sudden can not include gradual contaminant discharges; and, (3) sudden incorporates a temporal element.

The above certified questions are determinative of plaintiff's claim before this court that the policies provide coverage for the pollution contaminant claims against it.

 The contentions of the parties are consistent in our court. They engage directly our jurisprudential rules relating to the construction and interpretation of contracts of insurance. Our precedent in Wyoming establishes that an insurance contract is to be examined in fashion similar to any other contract. If the language of a contract is clear and unambiguous,· the parties are presumed to have intended the usual definitions attaching to their language in arriving at their contractual relationship. Such a contract will be enforced according to its terms, and we make no endeavor to rewrite such a contract for the parties.

The most frequently cited and quoted articulation of our rules of construction is found in *McKay v. Equitable Life Assur. Soc. of U.S.*, 421 P.2d 166, 168 (Wyo.1966), where we said:

It is plaintiff's position [*McKay* ] that the printed words "any employer" contained in the deduction clause of defendant's policy set forth above create an ambiguity, which according to well-recognized rules of construction applicable to insurance contracts establish fundamental error in the proceedings below. He relies primarily upon a general principle recognized by this court in *Wilson v. Hawkeye Casualty Co.*, 67 Wyo. 141, 215 P.2d 867 [ (1950) ], that where such contracts are so drawn as to be ambiguous and uncertain and to require construction, the contract will be construed liberally in favor of the insured and strictly against the insurer. Also, if the contract is fairly susceptible of two constructions, the one favorable to the insured will be adopted; and this in essence is the premise of plaintiff's argument inasmuch as it is suggested that the words "any employer" may be taken to mean

what defendant here says they mean, and that is any employer of plaintiff and his dependents, or as any employer of the plaintiff alone. Furthermore, says plaintiff, the latter is the most reasonable interpretation. The rule, that the language of the policy is to be tested by what a reasonable insured would understand the meaning of the language employed to be, is also advanced.

It is true that in the Wilson case we took cognizance of the foregoing general principles of construction often stated and applied in controversies involving policies of insurance. However, we also took cognizance of other equally applicable general principles and have before and since added to that body of the law. Thus, in essence and in addition to the tenets advanced by plaintiff, we have said-except where otherwise indicated-that the parties have the right to employ whatever lawful terms they wish and courts will not rewrite them. *Alm v. Hartford Fire Insurance Company*, Wyo., 369 P.2d 216, 217. In other words, the terms must not conflict with pertinent statutes or public policy. Such contracts should not be so strictly construed as to thwart the general object of the insurance. *Miles v. Continental Casualty Company*, Wyo., 386 P.2d 720, 722 [(1963)]. To this should be added the concept that the words used will be given their common and ordinary meaning. 13 Appleman, Insurance Law and Practice, Sec. 7402 (1943). The intention of the parties is the primary consideration and is to be ascertained, if possible, from the language employed in the policy, viewed in the light of what the parties must reasonably have intended. *Wilson v. Hawkeye Casualty Co.*, supra, 215 P.2d at 873–875. Absent ambiguity, there is no room for construction and the policy will be enforced according to its terms. *Addison v. Aetna Life Insurance Company*, Wyo., 358 P.2d 948, 950 [(1961)]. Neither will the language be 'tortured' in order to create an ambiguity. *Malanga v. Royal Indemnity Company*, 4 Ariz.App. 150, 418 P.2d 396, 399, 13 Appleman, Insurance Law and Practice, Sec. 7384 (1943).

A reordered and restated version of these same principles is found in *Commercial Union Ins. Co. v. Stamper*, 732 P.2d 534, 539 (Wyo.1987):

> Basic tenets stated in *McKay v. Equitable Life Assurance Society of the United States*, supra, 421 P.2d at 168, and applied in controversies involving insurance policies in the State of Wyoming are:
>
> 1. "[T]he words used will be given their common and ordinary meaning. 13 Appleman, Insurance Law and Practice, Sec. 7402 (1943). * * * Neither will the language be 'tortured' in order to create an ambiguity. *Malanga v. Royal Indemnity Company*, 4 Ariz.App. 150, 418 P.2d 396, 399 [1966], 13 Appleman, Insurance Law and Practice, Sec. 7384 (1943)."
>
> 2. "The intention of the parties is the primary consideration and is to be ascertained, if possible, from the language employed in the policy, viewed in the light of what the parties must reasonably have intended. *Wilson v. Hawkeye Casualty Co.*, [67 Wyo. 141], 215 P.2d [867] at 873–875 [1950]."
>
> 3. "Such [insurance policy] contracts should not be so strictly construed as to thwart the general object of the insurance. *Miles v. Continental Casualty Company*, Wyo., 386 P.2d 720, 722 [1963]."
>
> " * * * [T]he parties have the right to employ whatever lawful terms they wish and courts will not rewrite them. *Alm v. Hartford Fire Insurance Company*, Wyo., 369 P.2d 216, 217 [1962]."
>
> 4. "Absent ambiguity, there is no room for construction and the policy will be enforced according to its terms. *Addison v. Aetna Life Insurance Company*, Wyo., 358 P.2d 948, 950 [1961]."

> 5. " * * * [W]here such [insurance policy] contracts are so drawn as to be ambiguous and uncertain and to require construction, the contract will be construed liberally in favor of the insured and strictly against the insurer. Also, if the contract is fairly susceptible of two constructions, the one favorable to the insured will be adopted. [*Wilson v. Hawkeye Casualty Co.*, supra 215 P.2d at 867.]"

*See, e.g., State ex rel. Farmers Ins. v. District Court*, 844 P.2d 1099 (Wyo.1993); *Eisenbarth v. Hartford Fire Ins. Co.*, 840 P.2d 945 (Wyo.1992); *St. Paul Fire and Marine Ins. Co. v. Albany County School Dist. No. 1*, 763 P.2d 1255 (Wyo.1988).

In addition, we have been consistent in holding that the usual and established rules of contract construction apply to insurance policies. *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018 (Wyo.1993); *First Wyoming Bank v. Continental Ins.*, 860 P.2d 1094 (Wyo.1993); *Albany County School Dist No. 1; Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27 (Wyo. 1983); *State Farm Fire and Cas. Co. v. Paulson*, 756 P.2d 764 (Wyo.1988); *Compass Ins. Co. v. Cravens, Dargan & Co.*, 748 P.2d 724 (Wyo.1988). A corollary of this rule is that the interpretation of the contract is to be made by the court as a matter of law. *Albany County School Dist No. 1; Ricci v. New Hampshire Ins. Co.*, 721 P.2d 1081 (Wyo.1986); *Kost v. First National Bank of Greybull*, 684 P.2d 819 (Wyo.1984); *Hursh Agency, Inc. v. Wigwam Homes, Inc.; Shepard v. Top Hat Land and Cattle Company*, 560 P.2d 730 (Wyo.1977).

While we approached this issue in *Cravens, Dargan & Co.*,[2] and even quoted a similar policy provision, we had no occasion to resolve this issue in that case, and we did not. As the United States District Court concluded in certifying the cause to our court, the

---

**2.** In *Compass Ins. Co. v. Cravens, Dargan & Co.*, 748 P.2d 724 (Wyo.1988), the questions presented were whether the Compass policy covered an oil spill and, if so, whether Cravens was entitled to reimbursement from Compass. The oil spill was 3,000 gallons of road oil from a state highway maintenance yard which occurred when a trespasser opened an unlocked storage tank valve, an act of apparent vandalism. We held

that the loss was covered by the Compass policy and Cravens was entitled to reimbursement even though the Cravens policy through which the state was reimbursed for cleanup costs included a similar exclusion clause to the ones in issue here. The thrust of the decision was that Cravens was not a volunteer, in effect, that the exclusion did not apply to the event.

question is one of first impression in Wyoming. As is our custom, we consider the resolution of such a question in other tribunals to aid our decisional process.

Counsel have cited us to conflicting lines of authority. In accordance with one line of authority, the words "sudden and accidental" is deemed to be an ambiguous phrase, and the ambiguity leads to a construction of the contract against its drafter, the insurance company. In those cases, the resolution of that ambiguity imposes coverage upon the insurance carrier for such a loss.[3] According to the other line of authority, the term "sudden and accidental" has a plain meaning in the world of the lexicographer, and demands an event that occurs quickly, unexpectedly, and results in the escape of the pollutant. This line of authorities clearly attaches a temporal significance to the word "sudden." [4]

The courts that have arrived at ambiguity have used several rationales. These ca-

---

3. *See, e.g., Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha,* 126 Wash.2d 50, 882 P.2d 703 (1994); *Key Tronic v. Aetna (CIGNA) Fire Underwriters Ins. Co.,* 124 Wash.2d 618, 881 P.2d 201, 208 (1994); *Greenville County v. Ins. Reserve Fund,* 313 S.C. 546, 443 S.E.2d 552, 553 (1994); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.,* 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992); *Joy Technologies v. Liberty Mut. Ins.,* 187 W.Va. 742, 421 S.E.2d 493, 499–500 (1992); *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1091–92 (Colo.1991); *Just v. Land Reclamation, Ltd.,* 155 Wis.2d 737, 456 N.W.2d 570, 578 (1990); *Claussen v. Aetna Casualty & Sur. Co.,* 259 Ga. 333, 380 S.E.2d 686, 688 (1989); *United Pacific Ins. v. Van's Westlake Union,* 34 Wash.App. 708, 664 P.2d 1262, 1264, *review denied,* 100 Wash.2d 1018 (1983); *New Castle County v. Hartford Accident and Indem. Co.,* 933 F.2d 1162, 1198–99 (3rd Cir.1991); *Patz v. St. Paul Fire & Marine Ins. Co.,* 15 F.3d 699, 704 (7th Cir.1994); *City of Northglenn v. Chevron USA, Inc.,* 634 F.Supp. 217 (D.Colo.1986).

4. *See, e.g., Mustang Tractor and Equipment Co. v. Liberty Mutual Ins. Co.,* 76 F.3d 89 (5th Cir. 1996); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.,* 40 F.3d 146 (7th Cir.1994); *Smith v. Hughes Aircraft Co.,* 22 F.3d 1432. (9th Cir. 1993); *United States Fidelity & Guar. Co. v. Morrison Grain Co.,* 999 F.2d 489, 492 (10th Cir. 1993) (applying Kansas law); *Ray Industries Inc., v. Liberty Mutual Ins. Co.,* 974 F.2d 754 (6th Cir.1992), *reh'g denied* (Sept. 10, 1992); *Aetna Casualty & Sur. Co. v. General Dynamics Corp.,* 968 F.2d 707 (8th Cir.1992), *reh'g denied* (Sept. 2, 1992); *Northern Ins. Co. of New York v. Aardvark Assocs., Inc.,* 942 F.2d 189 (3d Cir.1991) (applying Pennsylvania law); *Lumbermens Mut. Casualty Co. v. Belleville Industries, Inc.,* 938 F.2d 1423 (1st Cir.1991), *cert. denied,* 502 U.S. 1073, 112 S.Ct. 969, 117 L.Ed.2d 134 (1992); *State of New York v. AMRO Realty Corp.,* 936 F.2d 1420 (2d Cir.1991); *Oklahoma Publishing Co. v. Kansas City Fire & Marine Ins. Co.,* 805 F.Supp. 905 (W.D.Okla.1992) (Oklahoma law); *Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Corp.,* 636 So.2d 700 (Fla.1993), *reh'g denied* (1994); *Polaroid Corp. v. Travelers Indem. Co.,* 414 Mass. 747, 610 N.E.2d 912 (1993); *City of Bronson v. American States Ins. Co.,* 215 Mich. App. 612, 546 N.W.2d 702 (1996); *Upjohn Co. v.*

*New Hampshire Ins. Co.,* 438 Mich. 197, 476 N.W.2d 392, 403 (1991), *reh'g denied* (Oct. 17, 1991); *Board of Regents of Univ. of Minn. v. Royal Ins. Co. of America,* 517 N.W.2d 888, 892 (Minn.1994); *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.,* 315 N.C. 688, 340 S.E.2d 374, 381–83 (1986); *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.,* 64 Ohio St.3d 657, 597 N.E.2d 1096 (1992), *reh'g denied* (Oct 28, 1992), *cert denied,* 507 U.S. 987, 113 S.Ct. 1585, 123 L.Ed.2d 152 (1993); *TNT Bestway Transportation Inc. v. Truck Insurance Exchange,* No. 1 CA–CV 92–0128, 1994 WL 464860 (Ariz.App. Aug.30, 1994); *Shell Oil Co. v. Winterthur Swiss Ins. Co.,* 12 Cal.App.4th 715, 15 Cal.Rptr.2d 815, 840 (1st Dist.1993), *rehearing denied and opinion modified on other* grounds (Feb. 22, 1993), *review denied* (May 13, 1993); *ACL Technologies, Inc. v. Northbrook Property & Cas. Ins. Co.,* 17 Cal. App.4th 1773, 22 Cal.Rptr.2d 206, 215 (4th Dist. 1993), *modified on other grounds* (Sept. 21, 1993), *review denied* (Nov. 17, 1993); *Barmet of Indiana, Inc. v. Security Ins. Group,* 425 N.E.2d 201, 203 (Ind.Ct.App., 1st Dist.1981); *Weber v. IMT Ins.* Co., No. 9–437, slip op. at 7 (Iowa Ct.App. Apr. 24, 1990) *aff'd,* 462 N.W.2d 283 (Iowa 1990); *Farm Bureau Mutual Insurance Co. v. Laudick,* 18 Kan.App.2d 782, 859 P.2d 410 (1993); *Bentz v. Mutual Fire, Marine & Inland Ins.* Co., 83 Md.App. 524, 575 A.2d 795 (990); *Sylvester Bros. Dev. Co. v. Great Central Ins. Co.,* 480 N.W.2d 368, 376 (Minn.Ct.App.1992); *Technicon Electronics Corp. v. American Home Assurance Co.,* 141 A.D.2d 124, 533 N.Y.S.2d 91 (1988); *County of Fulton v. United States Fidelity & Guaranty Co.,* 195 A.D.2d 864, 600 N.Y.S.2d 972 (1993); *Mays v. Transamerica Ins. Co.,* 103 Or.App. 578, 799 P.2d 653, 657 (1990), *review denied* (Feb 5, 1991); *Transamerica Ins. Co. v. Sunnes,* 77 Or.App. 136, 711 P.2d 212, 214 (1985), *review denied,* 301 Or. 76, 717 P.2d 631 (1986); *Lower Paxton Township v. United States Fidelity & Guar. Co.,* 383 Pa.Super. 558, 557 A.2d 393, 398 (1989), *appeal denied,* 523 Pa. 649, 567 A.2d 653 (1989); *Techalloy Co. v. Reliance Ins.* Co., 338 Pa.Super. 1, 487 A.2d 820, 827 (1984), *appeal denied,* (Pa. Oct. 31, 1985); *O'Brien Energy Systems, Inc. v. American Employers' Ins. Co.,* 427 Pa.Super. 456, 629 A.2d 957 (1993), *appeal denied,* 537 Pa. 633, 642 A.2d 487 (1994); *Gridley Associates, Ltd. v. Transamerica Insurance Co.,* 828 P.2d 524 (Utah App. 1992).

tegorizations are not absolute because, on occasion, a court has used more than one rationale. Some have treated the words "sudden" and "accidental" as synonymous, affording no significance to the word "sudden." E.g., Queen City Farms, Inc. v. Central Nat. Ins. Co. of Omaha, 126 Wash.2d 50, 882 P.2d 703 (1994); Key Tronic v. Aetna (CIGNA) Fire Underwriters Ins. Co., 124 Wash.2d 618, 881 P.2d 201, 208 (1994); Outboard Marine Corp. v. Liberty Mutual Ins., 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992). In other instances the courts have found the phrase "sudden and accidental" to be ambiguous. Some of these courts have reached that conclusion because the word "sudden" has more than one dictionary definition, and a construction against the drafter is invoked with the result being that "sudden" means "unexpected and unintended." E.g., Greenville County v. Ins. Reserve Fund, 313 S.C. 546, 443 S.E.2d 552, 553 (1994); Claussen v. Aetna Casualty & Sur. Co., 259 Ga. 333, 380 S.E.2d 686, 688 (1989); Patz v. St. Paul Fire and Marine Ins. Co., 15 F.3d 699, 704 (7th Cir.1994) (applying Wisconsin law). In other cases, courts have relied upon the definition of "accident" found in the policy which is "continuous or repeated exposure to conditions, which result in bodily injury or property damage, neither expected or intended from the standpoint of the insured." These courts have reasoned that treating "sudden" as meaning "unexpected and unintended" is more consistent with the policy definition because, if it were afforded temporal significance, that would be contrary to the concept of "continuous or repeated exposure." E.g., Hecla Mining Co. v. New Hampshire Ins. Co., 811 P.2d 1083, 1091, 1092 (Colo.1991); City of Northglenn v. Chevron U.S.A., Inc., 634 F.Supp. 217 (D.Colo.1986). In yet a fourth approach, courts have concluded that the phrase "sudden and accidental" is ambiguous, and have turned to past representations made to the insurance regulatory authority in the state. These courts have concluded that the carriers represented that the exclusion clauses were not intended to limit or narrow the policy coverage, and they have given a broad interpretation to the phrase "sudden

and accidental." E.g., Joy Technologies v. Lib. Mutual Ins., 187 W.Va. 742, 421 S.E.2d 493, 499, 500 (1992); Just v. Land Reclamation Ltd., 155 Wis.2d 737, 456 N.W.2d 570, 578 (1990); New Castle County v. Hartford Accident & Indem. Co., 933 F.2d 1162, 1198, 1199 (3d Cir.1991). Because of the limited statement of the facts provided in this certification, we do not consider this latter approach.

■ In interpreting contracts, one of our precepts is that we afford meaning to all of the language used if a reasonable construction can be achieved. Smith v. Nugget Exploration, Inc., 857 P.2d 320 (Wyo.1993); Hensley v. Williams, 726 P.2d 90 (Wyo.1986); Northern Gas Co. v. Town of Sinclair, 592 P.2d 1138 (Wyo.1979); Bulis v. Wells, 565 P.2d 487 (Wyo.1977); Shepard v. Top Hat Land & Cattle Co., 560 P.2d 730 (Wyo.1977); Rossi v. Percifield, 527 P.2d 819 (Wyo.1974). It is important that every word should be given effect. Nugget Exploration, Inc.; Rossi. The difficulty in adopting the reasoning of the courts that find ambiguity because the word "sudden" has more than one definition and is afforded the connotation of "unexpected and unintended" is that the word sudden is robbed of any significance. These cases are quite like those in which "sudden" and "accidental" are treated as synonymous which also afford no significance to the word "sudden." Essentially the same criticism must attach to those cases that depend upon the definition of "accident" or "occurrence."

We have examined and considered dictionary definitions of the word "sudden." In BLACK'S LAW DICTIONARY 1432 (6th ed.1990), it is defined as:

Happening without previous notice or with very brief notice; coming or occurring unexpectedly; unforeseen; unprepared for.

In WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993), it is defined as:

[H]appening without previous notice or with very brief notice: coming or occurring unexpectedly: not foreseen or prepared for * * *changing angle or character all at once: PRECIPITOUS * * * ABRUPT

\* \* \* come upon or met with unexpectedly \* \* \*.

In NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE 1422 (2d ed.1986), it is defined as:

Happening or coming unexpectedly; not foreseen or prepared for; sharp or abrupt; done, coming, or taking place quickly or abruptly; hasty.

In WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1178 (1991), it is defined as:

Happening or coming unexpectedly; changing angle or character all at once; marked by or manifesting abruptness or haste; made or brought about in a short time.

Of these several definitions, the only ones that afford significance, in the context of the exclusion clause at issue, to the word "sudden" are the definitions that connote a temporal aspect, such as "abrupt," "taking place quickly," or "made or brought about in a short time." Our disposition is to apply our usual rules to resolve this dispute. The application of those rules leads us to the conclusion that the words "sudden and accidental" encompass a temporal aspect that requires the occurrence of an event to happen abruptly, without any significant notice and unexpectedly. We perceive that the better reasoned authorities support this construction. It is consistent with our usual rule that we will accord significance to every word or phrase included in the contract by the parties. That is the premise for our answer to the first certified question.

■ We answer the first certified question by holding that "sudden" does have a temporal meaning. The exception to the exclusion clauses does not preserve coverage for gradual and unintentional discharges of pollutants unless such discharge is caused by a "sudden and accidental" event as we have defined that phrase.

■ In light of our answer to the first certified question, we answer the second certified question "no" because the words "sudden and accidental" are not ambiguous in the context of the exclusion clauses in these commercial policies. Once a temporal connotation is attached to the word "sudden," the phrase is not ambiguous. The insured party claiming coverage must be able to identify and establish an event that occurred abruptly or was made or brought about in a short period of time, such as the event in *Cravens, Dargan & Co.*, in order to avoid the exclusion clause. We acknowledge that this may be the situation even though the discharge and the damage may occur over a long period of time after the covered event before the injury is discovered.

We cannot ignore the fact that the version of the law which a court adopts in such an instance implements that court's view as to who, as a matter of public policy, should bear the burden of a catastrophic discharge of pollutants. In light of the brief of the State of Wyoming as *amicus curiae*, the choices are the state government, the insurance industry, or the respective business entrepreneurs. That may be a limited vision of the ultimate consequences. Conceptually, if the burden falls upon the State, the public-at-large will pay higher taxes; if the burden falls upon the insurance industry, the public-at-large will pay larger insurance premiums; and, if the burden must fall upon the business entrepreneurs, then they will have to charge more for their services or products in order to recoup such a loss. We are not insensitive to the potential of a catastrophic loss in this context resulting in the failure of an insurance company or a business entrepreneur. The government may be more hardy. Given the analysis that we have articulated, there seems to be no difference with respect to the ultimate burden arising out of the entity selected to be held responsible initially.

We answer both certified questions by holding that the word "sudden" has a temporal connotation, and by holding that this contract is not ambiguous in light of the interpretation of the meaning of the word "sudden." The case is returned to the United States District Court for further proceedings.