**SINCLAIR OIL CORPORATION,**
**a Wyoming Corporation,**
**Plaintiff,**

v.

**REPUBLIC INSURANCE COMPANY, a Delaware corporation, Defendant.**

**SINCLAIR OIL CORPORATION,**
**a Wyoming Corporation,**
**Plaintiff,**

v.

**ROYAL INSURANCE COMPANY OF AMERICA, a North Carolina Corporation, formerly Royal Globe Insurance Company; and Safeguard Insurance Company, a Connecticut corporation, Defendants.**

Nos. 91–CV–0261–J, 91–CV–0262–J.

United States District Court,
D. Wyoming.

June 9, 1997.

John B. Speight, Hathaway, Speight & Kunz, Cheyenne, WY, John E. Stanfield, Smith, Stanfield & Scott, Laramie, WY, Scott P. Rammell, Sinclair Oil Legal Department, Salt Lake City, UT, Brent Manning, Alan C. Bradshaw, Manning, Curtis, Bradshaw & Bednar, Salt Lake City, UT, for Plaintiff.

J. Kent Rutledge, Lathrop & Rutledge, Cheyenne, WY, Charles K. O'Neil, James C. LaForge, Alexander J. Kovacs, Brian Hart, Michael Gianaris, Daniel Estrin, Christine Searl, Chadbourne & Parke, New York City, Loyd E. Smith, Murane & Bostwick, Cheyenne, WY, for Defendant.

## ORDER GRANTING DEFENDANT RE-PUBLIC'S AND ROYAL'S MOTIONS FOR JUDGMENT ON THE PLEAD-INGS AND DISMISSING SINCLAIR'S SECOND, THIRD, FOURTH AND SIXTH CAUSES OF ACTION

ALAN B. JOHNSON, Chief Judge.

This matter is before the court on the Motion for Judgment on the Pleadings for

Failure to State a Claim for Bad Faith, Fraud or Estoppel filed by defendant Republic Insurance Company (Republic). Defendant Royal Insurance Company of America (Royal) joins in the motion. The court has considered the entire file and is fully advised.

Defendants move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) dismissing Sinclair's second, third, fourth and sixth causes of action in its Amended Complaints.[1] The factual and procedural background of this case is set forth in this court's previous decisions and need not be repeated here.

Plaintiff's second cause of action is titled, "Bad Faith Under the *Hatch* Case." It alleges that Republic's action in investigating Sinclair's claim is the type of bad faith that the Wyoming Supreme Court found to constitute bad faith in the case *Hatch v. State Farm Fire and Cas. Co. (Hatch I)*, 842 P.2d 1089, 1097 (Wyo., 1992). Sinclair's third cause of action is titled, "Coverage by Estoppel and for Fraud and Bad Faith Damages" and alleges that Republic violated its duty of good faith and fair dealing by not following the procedure requested by Sinclair; i.e., assisting in funding the settlement with the Brookhurst plaintiffs and then, pursuant to a reservation of rights, later litigating the coverage issue. The third cause of action also alleges that Sinclair is entitled to attorneys' fees and expenses incurred as a result of Republic's alleged "bad faith" filing of its 1991 declaratory judgment lawsuit in Utah in 1991.

Sinclair's fourth cause of action is titled "Willful and Wanton and Fraudulent Misconduct." It alleges that Republic violated the duty of good faith and fair dealing by failing to tell Sinclair about Republic's "coverage and contentions and the manner in which it investigated, handled and denied Sinclair's claims." In this cause of action Sinclair alleges that the policy terms were misrepresented by Republic's underwriters and by the insurance industry associations which obtained the approval of the policy provisions. In addition, the alleged misrepresentations appear to consist of the policy terms, an unspecified statement of opinion in a business transaction, and Republic's alleged failure to disclose to Sinclair or to warn Sinclair that Republic intended to act in bad faith toward its insured. The alleged willful and wanton conduct consists of allegations that Republic imposed unfair and unreasonable claims requirements, misrepresented its coverage, concealed its true intentions, failed to pay full benefits promptly and failed to disclose its true decision about the claim without unreasonable haggling and harassment. The Amended Complaint alleges that Republic's attorneys stalled, delayed and concealed the decision to deny the claim for the purpose of furthering a forum shopping scheme whereby Sinclair was lulled into inaction long enough for Republic to file its declaratory judgment action in the District of Utah.

The sixth[2] cause of action is for punitive damages.

Republic moves to dismiss these causes of action for the following reasons: (1) Sinclair has not pleaded any conduct by Republic that constitutes bad faith under *Hatch I, supra* or the *State Farm Mutual Automobile Insurance Co. v. Shrader*, 882 P.2d 813 (Wyo. 1994); (2) "Wyoming law does not provide a *Hatch I* bad faith tort remedy to a corporate insured in the commercial liability insurance context"[3]; (3) "Sinclair has not alleged any recoverable damages"[4]; (4) "Sinclair has not stated an estoppel claim under Wyoming law"[5]; (5) "Sinclair's vague allegations of fraud do not state a cause of action;"[6] and (5) Sinclair's claim for punitive damages should be dismissed because it is predicated

---

1. This opinion involves Sinclair's Amended Complaint against Republic filed on March 15, 1995 and supplemented on March 17, 1995 and Sinclair's Second Amended Complaint against Royal filed on March 30, 1995. For convenience, the court will refer to these documents simply as Amended Complaints.

2. The Amended Complaints against Republic and Royal do not have a fifth cause of action.

3. Republic's Memorandum of Law in Support of Defendant Republic Insurance Company's Motion for Judgment on the Pleadings, p. 16.

4. *Id.* at 20.

5. *Id.* at 21.

6. *Id.* at 23.

upon the causes of action that should be dismissed. Royal joins in Republic's motion. In the causes of action that are the subject of this motion, Sinclair's allegations against Royal are so similar to its allegations against Republic that the court will discuss them separately only insofar as it relevant to the motion to dismiss.

In response, Sinclair contends that it has stated a claim for violation of the duty of good faith and fair dealing under *Hatch I*. Sinclair further contends that it has stated a claim for estoppel and has pleaded its claim of fraud with sufficient particularity.

"A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is treated as a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Mock v. T.G. & Y. Stores, Co.*, 971 F.2d 522, 528 (10th Cir.1992). In considering a motion to dismiss this court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir.1996) (*quoting Gagan v. Norton*, 35 F.3d 1473, 1474 (10th Cir.1994)). "A Complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) only 'if the plaintiff can prove no set of facts to support a claim for relief.'" *Id. (quoting Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir.1995)) *accord Bintner v. Burlington Northern, Inc.*, 857 F.Supp. 1484, 1487 (D.Wyo.1994). In other words, the court assesses whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. *Id.*

## I. *Hatch I*–TYPE BAD FAITH——Second Cause of Action

■ The applicable law on insurance bad faith has been well-summarized in *International Surplus Lines Insurance Company v. University of Wyoming Research Corp.*, 850 F.Supp. 1509, 1526 (D.Wyo.1994) (characterizing *Hatch I* as recognizing the tort of "procedural" first-party bad faith), *aff'd, International Surplus Lines Ins. Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901 (10th Cir.1995) and need not be repeated here. Under *Hatch I*, it is clear that an insured may bring an independent tort if the manner in which the insurance company "investigated, handled or denied the claim" violated the duty of good faith and fair dealing. *Hatch I*, 842 P.2d at 1099. Unfortunately, there is still very little case law from the Wyoming Supreme Court clarifying what is, and what is not, the type of "oppressive and intimidating claims practices" that would constitute a claim for the type of bad faith recognized in *Hatch I*.[7]

■ It is clear that an insurance company's filing of a declaratory judgment action to determine coverage is not bad faith as described in the *Hatch I* opinion. *International Surplus Lines*, 850 F.Supp. at 1527; *see also Timberlake Construction Co. v. U.S. Fidelity & Guaranty Co.*, 71 F.3d 335, 340 (10th Cir.1995) (evidence of litigation-related misconduct is generally inadmissable on the issue of bad faith). The court will consider separately Sinclair's cause of action alleging *Hatch I* bad faith against each defendant.

### A. Second Cause of Action against Republic

■ Having carefully considered the Amended Complaint against Republic, the court finds that the allegations therein do not state a claim for bad faith in the investigation, handling or denial of the claim under *Hatch I*. Sinclair's theory requires that the court look to the secret motive of the insurer rather than to its objective actions to determine whether the insurer's investigation, handling, and denial of the claim violated a duty of good faith and fair dealing.

Assuming all allegations to be true, the Amended Complaint alleges that Republic "stalled" in announcing its secret decision to deny the claim during the period of September 5, 1991, through October 25, 1991. During this period, Sinclair granted Republic's request for access to its litigation material for the Brookhurst settlement and complied with Republic's excessive requests for information. On two occasions during this time Republic's counsel gave Sinclair's counsel assurances that the claim denial could be ren-

---

7. *See Davis v. State*, 910 P.2d 555, 558–59 (Wyo. 1996) (*Hatch I* does not apply to cases where a factual investigation of the claim is not necessary).

dered within two weeks. On another occasion Republic's counsel assured Sinclair's counsel that there would be a prompt response. Later, Republic's counsel told Sinclair's counsel that it would not be able to contribute to a settlement due on November 1, because it would not be able to complete its coverage investigation by then. The next day, on October 26, 1991, Republic filed its declaratory judgment action in the District of Utah and within the hour faxed Sinclair a letter stating that coverage was denied. Sinclair was damaged by this stalling because it was prevented from filing its own action here in Wyoming *first* because until Republic filed, Sinclair's counsel thought that there was a possibility that Republic might still contribute to the settlement. Sinclair was also damaged because it incurred attorney fees and costs in obtaining the dismissal of the Utah case. Within the hour following Republic's filing in Utah, Sinclair filed the present action.

As a matter of law these allegations do not state a claim for *Hatch I* type bad faith. If they did, then every time an insurer filed a declaratory judgment, an insured could bring a *Hatch I*-type claim simply by alleging that the insurer had concealed that it had secretly made up its mind to deny the claim and had begun preparation for filing a declaratory relief action sometime before telling the insured that is what it intended to do. This would change *Hatch I*-type bad faith from an examination of the insurer's objective actions in "investigation, handling and denial of claims" to examination of an insurer's litigation decisions. Thus, instead of examining the insurer's actions regarding the claim, courts would be required to examine such litigation decisions as to when an insurer made an actual decision to deny a claim in comparison to when it informed the insured, or when the insurer made a decision to deny the claim in comparison to when it filed for declaratory judgment to determine coverage.

Because there does not have to be a formal statement to the insured that coverage is denied before justiciable controversy exists [8] there is nothing inherently improper in filing for declaratory judgment before the insured is informed of a decision to either deny the claim or to seek declaratory judgment on coverage. Therefore, alleging an undisclosed intent to deny the claim or to file first in a different forum does not state a claim for the type of bad faith recognized in *Hatch I*.

■ Similarly, this court is not persuaded by Sinclair's contention that because Republic knew about the financial and litigation pressure experienced by Sinclair in the period from September 5, 1991 through October 25, 1991, that its allegations state a claim under *Hatch I*. It is a reality of life that an insured faced with litigation on a claim will always feel financial pressure if its insurance company has not yet agreed that the claim is covered and there will always be enormous financial pressure to settle multi-million dollar lawsuits. The allegation of such pressures is not, in this court's view, relevant to the determination of whether a plaintiff states a claim for *Hatch I*-type of bad faith.

■ Sinclair contends that Republic's alleged decision to stall for time so it could "shop" for and file in what it believed to be a favorable forum is evidence of *Hatch I*-type bad faith. This court does not agree. Where there is jurisdiction in more than one forum, it is not *Hatch I*-type of bad faith for an insurer to choose to file in a particular forum. It would be strange rule of law to hold that filing in an otherwise proper forum is bad faith simply because the litigant perceives that forum to be most favorable.[9] Sinclair's argument in this regard is that Republic unfairly stalled to allow it to beat Sinclair to the punch by one hour. This is merely litigation strategy and in the absence of dispositive case law from the Wyoming Supreme Court, this court will not extend *Hatch I* to cover such litigation decisions as

8. *See American Family Mutual Insurance Co. v. Bowser*, 779 P.2d 1376, 1380 (Colo.App.1989), *cert. denied (1989)*.

9. Sinclair has made its own litigation choices in this case based upon its own perceived self-

interest. Sinclair decided to file the present action in federal rather than state court. Sinclair decided to sue its insurers separately rather than joining all insurers, primary and excess, in a single action.

when, and where, to file for declaratory relief. Further, as noted in *International Surplus Lines Ins. Co.,* "while 'court-imposed' remedies may be necessary in certain circumstances, they are an unwarranted exercise of judicial prerogative when other avenues of redress, exist." 850 F.Supp. at 1529 (declining to extend *Hatch I* to cover allegation of harassing and oppressive litigation conduct). In this case Sinclair had other avenues of redress for Republic's action in allegedly filing in an inconvenient forum. See 28 U.S.C. § 1404(a) and (b). In fact, Sinclair successfully used one of these avenues, a motion to dismiss, and obtained dismissal of Republic's Utah declaratory judgment action when the Utah court declined to exercise its discretion under the Declaratory Judgment Act.

■ Sinclair contends that the following allegations also constitute bad faith within the meaning of the *Hatch I* case because they form part of Republic's bad faith conduct in its investigation, handling and denial of the claim: Republic included a misleading "pollution exclusion" clause in the policies. The insurance "industry" misled "state regulators" about the true meaning of the exclusion clauses. Republic acquiesced and relied upon the industry's misconduct when it incorporated the language into its policies and when it used the exclusion clause as a basis for denying Sinclair's claim.[10]

This court finds that these allegations do not state a claim for *Hatch I*-type of bad faith. It has been determined as a matter of law that the pollution exclusions at issue are not ambiguous. *Sinclair Oil Corp. v. Republic Ins. Co.,* 929 P.2d 535, 543 (Wyo.1996). Neither of the regulatory estoppel cases cited by Sinclair, *Morton International, Inc. v. General Accident Ins. Co.,* 134 N.J. 1, 629 A.2d 831 (1993) and *Queen City Farms, Inc. v. Central Nat. Ins. Co. Of Omaha,* 126 Wash.2d 50, 882 P.2d 703 (1994), stand for the proposition that the type of alleged facts giving rise to so-called regulatory estoppel also state a claim for bad faith of the type recognized in *Hatch I.*

■ Further, in the context of first party bad faith it is the rule that the insurer's actions in selling the policy cannot form the basis of a bad faith claim. *See Hays v. Jackson Nat. Life Ins. Co.,* 105 F.3d 583, 590 (10th Cir.1997) ("The tort of bad faith breach of an insurance contract must be based upon an insurer's wrongful denial of a claim; it cannot be based upon the conduct of the insurer in selling and issuing the policy."). This rule seems equally applicable to claims of *Hatch I*-type of bad faith.

Sinclair contends that inclusion of an allegedly ambiguous clause in the policies can give rise to a claim for bad faith citing a case decided under Oklahoma law, *Wolf v. Prudential Ins. Co.,* 50 F.3d 793, 800 (10th Cir. 1995). In *Wolf,* the court found that an insurer does not establish a "fairly debatable" defense to a claim of bad faith failure to pay a claim, i.e. first-party[11] bad faith, simply by showing that a term or clause in a policy is ambiguous. *Id.* at 799–800. In this case, we are not dealing with claim of first-party bad faith for the failure to pay a claim. See *White v. Continental General Insurance Co.,* 831 F.Supp. 1545, 1556 n. 13 (D.Wyo. 1993) (distinguishing first party bad faith in refusing to pay a claim under such cases as *McCullough v. Golden Rule Ins. Co.,* 789 P.2d 855 (Wyo.1990) from *Hatch I* "which deals with bad faith in the claims process"). Further, as noted above, the pollution exclusion clauses at issue in this case have been determined not to be ambiguous as a matter of law. *Sinclair Oil Corp.,* 929 P.2d at 543.

Because this court has found that the Amended Complaint fails to plead any conduct that constitutes bad faith under the *Hatch I* case, the court need not address Republic's contention that Wyoming law does not provide a *Hatch I* bad faith tort remedy to a corporate insured in the commercial liability insurance context. Similarly, this court need not address Republic's contention that the bad faith claim must be dismissed because Sinclair has not alleged any recoverable damages.

---

**10.** These facts also form the basis of Sinclair's coverage by estoppel claim discussed below.

**11.** In *Wolf,* the insurer in its role as plan administrator was held to the same duty of good faith as an insurer would have been. *Id.* at 797–98.

According, the Amended Complaint's allegations failing to state a claim under Hatch I, the court will grant defendant Republic's motion for judgment on the pleading for Sinclair's second cause of action.

## B. Second Cause of Action against Royal

■ Sinclair's Second Amended Complaint against Royal is substantially similar to its complaint against Republic. However, instead of alleging a forum shopping scheme, Sinclair alleges that Royal "failed to reveal to Sinclair what they knew about the claims actions and plans of Republic Insurance Company, including filing the Utah action." Second Amended Complaint ¶ 55(1). Sinclair also alleges that in response to Sinclair's demand that Royal contribute to the Brookhurst settlement, Royal made a settlement offer that was "unacceptable," "meaningless" and "in bad faith." *Id.* at ¶ 27.

In a recent pleading [12] Sinclair make a variety of new allegations in support of its contention that Royal acted in bad faith. Its allegations fall into the following categories: (1) Royal does not have a good faith basis for denying the claim or for denying its duty to defend and (2) Royal has acted improperly in discovery. Any alleged lack of a good faith basis for denying the claim or denying the duty to defend involves matters relevant to substantive first party bad faith, a claim not made in the Second Amended Complaint and not relevant to the *Hatch I*-type of bad faith claim that Sinclair has brought. Further these allegations relate to Sinclair's claim of coverage (Sinclair's first cause of action) which is not the subject of this motion for judgment on the pleadings.

■ The category of litigation-orientated discovery, as noted above, has no application in the *Hatch I* type of bad faith claim. The theory that an insurer's litigation-related conduct could be the subject of a *Hatch I*-type claim of bad faith was analyzed and soundly rejected in this jurisdiction in the *Surplus Lines Insurance Company case.*

The defendants' final argument in support of its procedural first-party bad faith claim is, broadly phrased, that plaintiff's counsel's "litigation conduct" in defending this suit, in regards to particular discovery matters relative to the bad faith issues, has been malicious and oppressive. There are several valid reasons to reject these claims.

First and foremost, the purpose behind *Hatch* [I] is to deter insurers from engaging in "oppressive and intimidating *claim practices.*" *Hatch* [I], 842 P.2d at 1099 (emphasis added). Thus, *Hatch* [I] applicability beyond the context of insurance claims practices is questionable. In addition to the fact that neither *Hatch* [I] nor any case cited by counsel for the defendants supports the defendants' fairly dramatic proposition that *Hatch* [I] extends litigation-oriented misconduct by counsel for the insurer, the few courts that have considered this issue have uniformly rejected this argument, concluding that the implied covenant of good faith and fair dealing has no application in this setting. *See, e.g., Palmer v. Farmers Ins. Exch.,* 261 Mont. 91, 861 P.2d 895, 914 (1993); *FDIC v. Aetna Cas. & Sur. Co.,* 903 F.2d 1073, 1079–80 (6th Cir.1990). The court finds these opinions persuasive.

\* \* \* \* \* \*

Assuming, without deciding, that counsel for the plaintiff were in fact engaging in such misconduct, it is clear that there are various remedies available to a litigant who wishes to redress allegations of unfair or improper litigation conduct by opposing counsel under the Federal Rules of Civil Procedure.

\* \* \* \* \* \*

[I]t is clear that the "court-imposed" covenant of good faith and fair dealing would probably not be extended to cover allegations of procedural first-party bad faith involving allegations of harassing and oppressive litigation conduct because of the other avenues of redress that exist.

Finally, it must be noted that yet another reason exists for finding that allegations of litigation misconduct do not support a claim under *Hatch* [I]. Claims of this type

---

12. Sinclair's Response to Royal's Joinder in Republic's Notice of Additional Authorities in Support of Republic's Motion for Judgment on the Pleadings.

are not even directed at the insurer per se, but rather are focused at counsel for the insurer. Aside from the fact that the purpose of the covenant of good faith and fair dealing, namely, deterrence of these claims practices by insurers and their adjusters, would not be furthered by applying it to counsel for the insurer, it is clear that such an unwarranted imposition of liability might have a chilling effect on insurers, which could unfairly penalize them by inhibiting their attorneys from zealously and effectively representing their clients within the bounds permitted by law. *See Palmer,* 861 P.2d at 914.

In sum, the tort action of procedural first-party bad faith was never intended to be a panacea for all litigation-related misconduct.

850 F.Supp. at 1528–29.

Having considered Sinclair's Second Amended Complaint against Royal this court concludes that Sinclair does not allege facts that would constitute bad faith under the *Hatch I* case. Accordingly, the court will dismiss Sinclair's second cause of action against Royal.

## II. ESTOPPEL—Third Cause of Action

Republic's allegations supporting this claim are so similar for Republic and Royal that the court will address them together. Defendants contend that Sinclair's third cause of action does not state a claim for estoppel.

Sinclair contends that it has stated a claim for "coverage by estoppel" and, as noted above, cites in support *Morton,* 629 A.2d 831 and *Queen City Farms,* 882 P.2d 703. Further, Sinclair contends that the Wyoming Supreme Court left this issue of coverage by estoppel open for this court to decide. *See Sinclair,* 929 P.2d at 543.

The theory raised by Sinclair may be described as "regulatory estoppel," as recognized in *Morton.* In *Morton,* the court found that standard pollution exclusion clauses should not be construed in a manner consistent with the clauses' literal language because of the insurance industry's misleading presentations to state regulators. 629 A.2d at 872–73 and 875.

In this diversity case, this court must apply the applicable state law, the law of Wyoming. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938) (when sitting in diversity, federal court must apply law of forum state as declared by that state's highest court or legislature). Recognizing that the Wyoming Supreme Court has not spoken on this issue, this court must determine how it believes that court would rule if confronted with the question. *Jacobs v. Dista Products Co.,* 693 F.Supp. 1029, 1031 (D.Wyo.1988) (where no controlling state law, federal court must make its "best estimate" of how state's highest court would rule). In making this determination, this court considers state court decision, decisions of other states, federal decisions, and the general weight and trend of authority. *Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir.1988).

This court declines to adopt the theory of regulatory estoppel as inconsistent with Wyoming insurance law. In making this decision this court found persuasive the Tenth Circuit Court of Appeals' opinion rejecting the doctrine of coverage by regulatory estoppel under state law very similar to the Wyoming law that this court must apply. In *Federated Mutual Insurance Co. v. Botkin Grain Co.,* 64 F.3d 537 (10th Cir.1995) the Tenth Circuit examined the insured's claim under Kansas law and declined to certify the question of regulatory estoppel to the Kansas Supreme Court.

> We have held, however, that under Kansas law, the term "sudden and accidental" is unambiguous and has an objective temporal meaning referring to both the inception and duration of the pollution.
>
> \* \* \* \* \* \*
>
> [Plaintiff] argues that, because the insurers represented to the Kansas Insurance Commissioner, when seeking approval of the pollution exclusion in 1970, that it was merely a clarification, they should be estopped from taking any other position now.
>
> \* \* \* \* \* \*
>
> We find that the position urged by [plaintiff] conflicts with Kansas law on the interpretation of insurance policies and the ap-

plication of the doctrine of estoppel. First under Kansas law, if policy language is clear and unambiguous, the policy "must be enforced according to the plain, common and popular meaning of its terms." *Morrison II,* 999 F.2d at 492. *See also Coleman Company, Inc. v. California Union Insurance Company,* 960 F.2d 1529, 1536 (10th Cir.1992) (Kansas rules for interpreting insurance policies do not include consideration of extrinsic evidence). As noted above, the pollution exclusion is clear and unambiguous, therefore we must ascertain the intent of the parties according to the plain language of the policy and cannot consider the extrinsic evidence of the representations made to the Kansas Insurance Commissioner.

The doctrine of estoppel does not change the result mandated by the rules of contract construction. Waiver and estoppel may be invoked to forestall the forfeiture of an insurance contract, but they cannot be used to expand its coverage.

*Id.* at 540–41.

Wyoming law is similar to Kansas law. Under Wyoming law, where the insurance contract is unambiguous, if policy language is clear and unambiguous, the words of the policy are given their plain, ordinary, and customary meaning. *State ex rel. Farmers Ins. Exchange v. District Court of Ninth Judicial Dist., County of Teton,* 844 P.2d 1099 (Wyo.1993). The pollution exclusion at issue in this case is unambiguous, *Sinclair Oil Corp.,* 929 P.2d at 543, therefore we must ascertain the intent of the parties according to the plain language of the policy and cannot consider any extrinsic evidence. *Id.* at 539 (*quoting McKay v. Equitable Life Assur. Soc. of U.S.,* 421 P.2d 166, 168 (Wyo.1966)); *Martin v. Farmers Ins. Exchange,* 894 P.2d 618, 620 (Wyo.1995) ("Only when a contract is ambiguous do we acquire license to construe that document by resort to extrinsic evidence."); *Doctors' Company v. Ins. Corp. of America,* 864 P.2d 1018, 1024 (Wyo.1993) ("If the language is unambiguous, our examination is confined to the 'four corners' of an integrated contract and extrinsic evidence is

not admitted to contradict the plain meaning."). Therefore, this court cannot look to proceedings before the Wyoming Insurance Commission to vary the plain terms of the policies.

Because Sinclair's regulatory estoppel or coverage by estoppel theory conflicts with the long settled Wyoming law regarding construction of insurance contracts, this court believes that the Wyoming Supreme Court would reject the theory. Therefore, this court will reject the theory.

Sinclair also contends that the Amended Complaints against Republic and Royal state a claim under ordinary principles of equitable estoppel.[13] Under Wyoming insurance law, equitable estoppel "will not operate to create additional coverage in an existing contract of insurance." *Verschoor v. Mountain West Farm Bureau Mutual Ins. Co.,* 907 P.2d 1293, 1298 (Wyo.1995).

Sinclair's allegations fall within the rule announced in *St. Paul Fire and Marine Ins. Co. v. Albany County School Dist. No. 1,* 763 P.2d 1255 (Wyo.1988). "The doctrine of implied waiver or estoppel is not available to bring within the coverage of an insurance policy risks that are not covered by its terms or that are expressly excluded therefrom." *Id.* at 1261 (*quoting Sowers v. Iowa Home Mutual Casualty Ins. Co.,* 359 P.2d 488, 493 (Wyo.1961)). Accordingly, the court will dismiss Sinclair's claim of regulatory estoppel and equitable estoppel.

### III. FRAUD—Third Cause of Action

Sinclair's claims of fraud are so similar for both defendants that the court will discuss them together. Defendants contend that Sinclair's fraud claims should be dismissed because they are not stated with particularity. Further, defendants contend that because the Wyoming Supreme Court has determined that the pollution exclusion clauses are not ambiguous, Sinclair's claim of fraud must be dismissed because they were premised on the claimed ambiguity.

Sinclair contends that fraud is pleaded with sufficient particularity and that the Wy-

---

13. Sinclair does not make a claim under promissory estoppel. *See White,* 831 F.Supp. at 1559 n. 16 (distinguishing promissory estoppel from equitable estoppel).

oming Supreme Court's finding that the clauses are not ambiguous does not affect its claim for coverage by fraud.

■ ▪Sinclair summarizes its allegations in support of this claim as follows:

The insurance industry, as Republic's agent, (First Amended Complaint ¶¶ 42–44), made false statements to regulators, including the Wyoming Insurance Commission, that the pollution exclusion was a clarification and did not change coverage existing under the previous form policy. (First Amended Complaint ¶¶ 33–41). The insurance regulators, and Sinclair itself, relied upon these false representations. (First Amended Complaint ¶¶ 38–39, 71).

Sinclair's Response to Republic's Notice of Additional Authority in Support of Republic's Motion for Judgment on the Pleadings p. 8 ¶ 24.

It is important to note that Sinclair does not bring a claim for common law fraud. Instead, Sinclair seeks to have this court adopt a new theory of "coverage by fraud." Thus Sinclair's third cause of action for coverage by fraud is merely a reiteration of Sinclair's position on what the pollution exclusion clause means by reference to extrinsic evidence. For the same reasons noted above, the court rejects this theory because it is incompatible with Wyoming insurance law.

■ Further, to the extent that Sinclair bases its coverage by fraud claim upon its allegation that defendants breached a "duty and obligation to specifically explain, identify and inform Sinclair of any gaps in the purchased · coverage and provide reasonable warnings about any exclusions or limitations which might eliminate or minimize the expected protection" [14] under the coverage provided, the court rejects this theory. "[A]bsent special circumstances, an insurer has no duty to anticipate what liabilities an insured may expect a policy to cover or to identify which exclusions in a policy an insured may expect a policy to cover or to identify which exclusions in a policy an insured may deem important." *Sprangers v. Greatway Ins. Co.,* 182 Wis.2d 521, 514 N.W.2d 1, 11 (1994). Sinclair does not allege "special circum-

stances" in these cases that would give rise to such a duty.

Accordingly, the court will dismiss Sinclair's third cause of action for coverage by estoppel, for fraud and for bad faith damages.

## IV. WILLFUL AND WANTON AND FRAUDULENT MISCONDUCT— Fourth Cause of Action

This cause of action is merely a restatement of Sinclair's previous claims of *Hatch I*-type bad faith and coverage by fraud. For the reasons stated previously, the claim will be dismissed.

## VI. PUNITIVE DAMAGES—Sixth Cause of Action

The only remaining claims are Sinclair's first causes of action for breach of contracts of insurance, which claims allow for compensatory damages only. *Arnold v. Mountain West Farm Bureau Mutual Ins. Co., Inc.,* 707 P.2d 161, 164 (Wyo.1985). Because the underlying claims that are the predicate for the punitive damages claim are being dismissed, the punitive damages claim will be dismissed also.

The dismissal of Sinclair's claims for punitive damages in no way affects its claims under its first causes of action for expenses and interest pursuant to Wyo.Stat. § 26–15–124 (1977 as amended)

## CONCLUSION

The only claims remaining are Sinclair's claims for coverage under the various policies. The Wyoming Supreme Court's opinion that the pollution exclusion clauses are not ambiguous has paved the way for a straightforward analysis of whether there is, or is not, coverage under each policy. Accordingly, this case should be well on its way to trial. It is therefore

ORDERED that defendant Republic Insurance Company's Motion for Judgment on the Pleadings for Failure to State a Claim for Bad Faith, Fraud or Estoppel is **GRANTED.** It is further

14. See Second Amended Complaint against Roy-

al, ¶ 59 p. 24.

472

ORDERED that Sinclair's second, third, fourth and sixth causes of action against defendant Republic Insurance Company are **DISMISSED** with prejudice. It is further

ORDERED that Royal Insurance Company's Motion for Judgment on the Pleadings for Failure to State a Claim for Bad Faith, Fraud or Estoppel is **GRANTED**. It is further

ORDERED that Sinclair's second, third, fourth and sixth causes of action against defendant Royal Insurance Company of America are **DISMISSED** with prejudice.